UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

## CASE NO.: 09-CIV-20657-GOLD/McALILEY

MARTHA AGUILAR, an individual, SALVADOR
AGUILAR, an individual, CESAR
ALTAMIRANO, an individual, ANGELES
ARANGO-CARRENO, an individual, SHERWIN
ANICIETE, an individual, ARACELIS FARIAS, an
individual, KATHY AVILLA, an individual,
LINDA BARTLETT, an individual, THOMAS
BENEDICT, an individual, WINIFRED BIGGS, an
individual, LORAN BIGGS, an individual,
RODGER BONITE, an individual, JEAN BONITE,
an individual, GARY BOUTIN, an individual,
WILLIAM BOYCE, III, an individual, RANDY
BRAITHWAITE, an individual, RONDA
BRAITHWAITE, an individual, FRANCES
BROUGHTON, an individual, ALAN BURICA, an
individual, STEVEN CABEZUD, an individual,
JANET CABEZUD, an individual, STEVEN
CAGLE, an individual, SHARON ROBERTS-
CAGLE, an individual, JAMES CATLEDGE, an
individual, VICTOR CHAVEZ, an individual,
PAUL CHRISTENSEN, an individual, MICHELLE
CHRISTENSEN, an individual, CHRISTOPHER
CLENDENNING, an individual, CHRISTINE
CLENDENNING, an individual, ANTWON COLE,
an individual, ANGELA COLE, an individual,
AARON CROTTY, an individual, MARGARET
CURRIE, an individual, MARYANN CURRIE, an
individual, GABRIEL DIAZ, an individual,
GEOFFREY DUGMORE, an individual, MARIA
JUANA ESCOBEDO, an individual, JUDITH
FERGUSON-JOHNSON, an individual, RICK
FRANCOM, an individual, KAREN FRANCOM,
an individual, LINDA FRYE, an individual, ADAN
GALVAN, an individual, LAMBERTO GARCIA,
an individual, MALY GARCIA, an individual,
YVES GERVAIS, an individual, JAIME
GERVAIS, an individual, FERNANDO
GONZALEZ, an individual, LISBETH
GONZALEZ, an individual, FINY GONZALEZ, an
individual, SANTOS GONZALEZ, an individual,
MILES GRANT, an individual, SHARON

BRAHMS, an individual, MANUELA
GUTIERREZ, an individual, ADAN GUTIERREZ,
an individual, GARY GYURKOVITZ, an
individual, DIANA GYURKOVITZ, an individual,
GEORGE HALL, an individual, LAWRENCE
HENRY, an individual, CYNTHIA HENRY, an
individual, MIGUEL CORTES HERNANDEZ, an
individual, MARIA FIERRO HERNANDEZ, an
individual, GRACE HERRERA, an individual,
DANIEL HIXSON, an individual, AMY HIXSON,
an individual, PETER HOGE, an individual,
IGNACIO JACINTO, an individual, ELIA
JACINTO, an individual, PETER JEONG, an
individual, EVELYN JONES, an individual,
DONNA KUCK, an individual, RICHARD
PHILLIPS, an individual, SHEILA KUCK, an
individual, BRYAN LAMB, an individual, SUSAN
LAMB, an individual, LINGZI LI, an individual,
LOUIS (TONY) LOOPER, an individual, JILL
LOOPER, an individual, EUGENE MANCEBO, an
individual, GERALDINE MANCEBO, an
individual, SHAWN MANCEBO, an individual,
RAUL MANCILLA, an individual, NORA
MANCILLA, an individual, MICHAEL MCGIRR,
an individual, RUEBEN MEJIA, an individual,
RAMA MEJIA, an individual, GLORIA MOORE,
an individual, MARLA MOORE, an individual,
JEFF MORGAN, an individual, BARBARA
NAGEL, an individual, DALLAS NESSEN, an
individual, DEEANN NESSEN, an individual,
KENT NEVILLE, an individual, LINDA
NEVILLE, an individual, PAUL NIELSON, an
individual, CORY NILSSON, an individual,
KRISTEN NILSSON, an individual, JAMES
OSBORN, an individual, ALICIA OSBORN, an
individual, KATHY OVA, an individual, GARY
PETERSON, an individual, SHIRLEEN
PETERSON, an individual, MILDRED PHILLIPS,
an individual, RANDY POLATIS, an individual,
JOYCE POLATIS, an individual, ADOLFO
RAMIREZ, an individual, CLEMENTINA
GARCIA, an individual, DIANE INGALLS REID,
an individual, ALBERTO REYES, an individual,
ROZALBA MANZO DE REYES, an individual,
DANIEL REYES, an individual, IMELDA REYES,
an individual, RAFAEL REYES, an individual,

ANGELA REYES, an individual, SONIA
MORENO REYES, an individual, ALFREDO
MORENO, an individual, FRANCISCO REYES
ESPINOZA, an individual, VICENTE REYES
ESPINOSA, an individual, TERRY RIENDEL, an
individual, MARTIN RIVERA, an individual,
LEONILA RIVERA, an individual, DAVID
ROCHEFORD, an individual, DANIELLE
ROCHEFORD, an individual, TONYA
ROYSTON, an individual, MAI SHIN LAI, an
individual, RICHARD SMITH, an individual,
HEIDI SMITH, an individual, SHIRLEY SOLA, an
individual, NORMAN SORENSON, an individual,
ROBIN FRAME SORENSON, an individual,
ROBERTO SOTO, an individual, OLGA
RAMIREZ SOTO, an individual, CLARK
STEWART, an individual, MYRA STEWART, an
individual, RYAN STOCKLE, an individual,
CARLY STOCKLE, an individual, THOMAS
STOCKLE, an individual, LARRY TEVES, an
individual, RUTH TEVES, an individual, NANCY
THORNE, an individual, CATHERINE VALDEZ,
an individual, OCTAVIO VALENCIA, an
individual, FRANCISCO VARGAS, an individual,
ROSA VARGAS, an individual, GEORGE
VAUGHN, an individual, CHRIS VERANO an
individual, CYNTHIA VERANO, an individual,
VICTOR VIDAS, an individual, CHERYL VIDAS,
an individual, DAVID WALTERS, an individual,
ELIZABETH WALTERS, an individual,
RICHARD WANN, an individual, BOBBI LI
WANN, an individual, JAMES WELSCH, an
individual, TERRI WELSCH, an individual, ELVA
WHITE an individual, BRENT WOODWARD, an
individual, MICHELE WOODWARD, an
individual, and DEBORAH ZOTTI, an individual,

   Plaintiffs,

vs.

EMI RESORTS, INC., a foreign corporation,
EMI SUN VILLAGE, INC., a foreign corporation,
HSV HOTELES DE OPERADORA,S.A., f/k/a
EMI RESORTS MANAGEMENT, S.A., a foreign
corporation, EMI RESORTS MANAGEMENT
(S.V.G.), INC., a foreign corporation, EMI
COFRESI DEVELOPMENTS, INC. a/k/a COFRESI

DEVELOPMENTS, INC., a foreign corporation,
ELLIOTT MANAGEMEN, INC., a/k/a
EMI MANAGEMENT,INC., a foreign corporation,
INVERSIONES AVIATI, S.A., a foreign corporation,
 SUN VILLAGE JUAN DOLIO, INC., a foreign
corporation, PROMOTORA XARA, S.A., a foreign
corporation, ELLIOTT MICHES HOLDINGS,
INC., a foreign corporation, INVERSIONES
YUBASO, S.A., a foreign corporation,
INMOBILIARIA LIRIOS DEL TROPICO,
S.A., a foreign corporation, INMOBILIARIA
CANADAIGUA, S.A., a foreign corporation,
HSV HOLDINGS, S.A., a foreign corporation,
DESARROLLOS MIRADOR COFRESI, S.A.,
a foreign corporation, TENEDORA HSV [BP],
S.A., a foreign corporation, VILLA SANTA
PONCA, S.A., a foreign corporation, DCS
DOMINICAN CONSTRUCTION SERVICES,
S.A., a foreign corporation, ELLIOTT REGENT
HOLDINGS, INC., a foreign corporation,
ELLIOTT TOSCANA HOLDINGS, INC., a
foreign corporation, LANDMARK LENDING
CORPORATION, a foreign corporation, 408
CUMBERLAND HOLDINGS, INC., a foreign
corporation, BERTUS MANAGEMENT, INC.,
a foreign corporation, ORANGEVILLE
RESERVATION SERVICES, LTD., a California
corporation, CCW DOMINICANA, S.A., a foreign
corporation, MPS LTD., S.A., a foreign corporation,
COFRESCO HOLDINGS, INC., a foreign
corporation, IMMOBILIARIA MONCEY,
S.A., a foreign corporation, CELLWAVE
NETWORKS, LTD., a foreign corporation, WWIN
INTERNATIONAL LTD., a foreign corporation,
MELLESINO C. POR A., a foreign corporation,
TENEDORA WESSEX DOMINICANA, S.A., a foreign
corporation, SUN VILLAGE CONTRUCCIONES, S.A.,
a foreign corporation, SUN VILLAGE JD HOLDING, INC.,
a Delaware corporation, 1211766 ALBERTA LTD., a foreign
corporation, TRIPALMS REAL ESTATE INC., a foreign
corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a
foreign corporation, DE MARCHENA KALUCHE &
ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA,
an individual, VICTOR CABRAL, an individual, N.W.N.
GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC,
a Nevada limited liability, company, MICHAEL LAWTER,
an individual, TIPPY TAN LAWTER, an individual,
FREDERICK ELLIOTT, an individual, and DEREK ELLIOTT,
 an individual,

    Defendants.
_____/

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, MARTHA AGUILAR, an individual, SALVADOR AGUILAR, an individual, CESAR ALTAMIRANO, an individual, ANGELES ARANGO-CARRENO, an individual, SHERWIN ANICIETE, an individual, ARACELIS FARIAS, an individual, KATHY AVILLA, an individual, LINDA BARTLETT, an individual, THOMAS BENEDICT, an individual, WINIFRED BIGGS, an individual, LORAN BIGGS, an individual, RODGER BONITE, an individual, JEAN BONITE, an individual, GARY BOUTIN, an individual, WILLIAM BOYCE, III, an individual, RANDY BRAITHWAITE, an individual, RONDA BRAITHWAITE, an individual, FRANCES BROUGHTON, an individual, ALAN BURICA, an individual, STEVEN CABEZUD, an individual, JANET CABEZUD, an individual, STEVEN CAGLE, an individual, SHARON ROBERTS-CAGLE, an individual, JAMES CATLEDGE, an individual, VICTOR CHAVEZ, an individual, PAUL CHRISTENSEN, an individual, MICHELLE CHRISTENSEN, an individual, CHRISTOPHER CLENDENNING, an individual, CHRISTINE CLENDENNING, an individual, ANTWON COLE, an individual, ANGELA COLE, an individual, AARON CROTTY, an individual, MARGARET CURRIE, an individual, MARYANN CURRIE, an individual, GABRIEL DIAZ, an individual, GEOFFREY DUGMORE, an individual, MARIA JUANA ESCOBEDO, an individual, JUDITH FERGUSON-JOHNSON, an individual, RICK FRANCOM, an individual, KAREN FRANCOM, an individual, LINDA FRYE, an individual, ADAN GALVAN, an individual, LAMBERTO GARCIA, an individual, MALY GARCIA, an individual, YVES GERVAIS, an individual, JAIME GERVAIS, an individual, FERNANDO GONZALEZ, an individual, LISBETH GONZALEZ, an individual, FINY GONZALEZ, an individual, SANTOS GONZALEZ, an individual, MILES GRANT, an individual, SHARON BRAHMS, an

individual, MANUELA GUTIERREZ, an individual, ADAN GUTIERREZ, an individual, GARY GYURKOVITZ, an individual, DIANA GYURKOVITZ, an individual, GEORGE HALL, an individual, LAWRENCE HENRY, an individual, CYNTHIA HENRY, an individual, MIGUEL CORTES HERNANDEZ, an individual, MARIA FIERRO HERNANDEZ, an individual, GRACE HERRERA, an individual, DANIEL HIXSON, an individual, AMY HIXSON, an individual, PETER HOGE, an individual, IGNACIO JACINTO, an individual, ELIA JACINTO, an individual, PETER JEONG, an individual, EVELYN JONES, an individual, DONNA KUCK, an individual, RICHARD PHILLIPS, an individual, SHEILA KUCK, an individual, BRYAN LAMB, an individual, SUSAN LAMB, an individual, LINGZI LI, an individual, LOUIS (TONY) LOOPER, an individual, JILL LOOPER, an individual, EUGENE MANCEBO, an individual, GERALDINE MANCEBO, an individual, SHAWN MANCEBO, an individual, RAUL MANCILLA, an individual, NORA MANCILLA, an individual, MICHAEL MCGIRR, an individual, RUEBEN MEJIA, an individual, RAMA MEJIA, an individual, GLORIA MOORE, an individual, MARLA MOORE, an individual, JEFF MORGAN, an individual, BARBARA NAGEL, an individual, DALLAS NESSEN, an individual, DEEANN NESSEN, an individual, KENT NEVILLE, an individual, LINDA NEVILLE, an individual, PAUL NIELSON, an individual, CORY NILSSON, an individual, KRISTEN NILSSON, an individual, JAMES OSBORN, an individual, ALICIA OSBORN, an individual, KATHY OVA, an individual, GARY PETERSON, an individual, SHIRLEEN PETERSON, an individual, MILDRED PHILLIPS, an individual, RANDY POLATIS, an individual, JOYCE POLATIS, an individual, ADOLFO RAMIREZ, an individual, CLEMENTINA GARCIA, an individual, DIANE INGALLS REID, an individual, ALBERTO REYES, an individual, ROZALBA MANZO DE REYES, an individual, DANIEL REYES, an individual, IMELDA REYES, an

individual, RAFAEL REYES, an individual, ANGELA REYES, an individual, SONIA

MORENO REYES, an individual, ALFREDO MORENO, an individual, FRANCISCO REYES

ESPINOZA, an individual, VICENTE REYES ESPINOSA, an individual, TERRY RIENDEL,

an individual, MARTIN RIVERA, an individual, LEONILA RIVERA, an individual, DAVID

ROCHEFORD, an individual, DANIELLE ROCHEFORD, an individual, TONYA ROYSTON,

an individual, MAI SHIN LAI, an individual, RICHARD SMITH, an individual, HEIDI SMITH,

an individual, SHIRLEY SOLA, an individual, NORMAN SORENSON, an individual, ROBIN

FRAME SORENSON, an individual, ROBERTO SOTO, an individual, OLGA RAMIREZ

SOTO, an individual, CLARK STEWART, an individual, MYRA STEWART, an individual,

RYAN STOCKLE, an individual, CARLY STOCKLE, an individual, THOMAS STOCKLE, an

individual, LARRY TEVES, an individual, RUTH TEVES, an individual, NANCY THORNE,

an individual, CATHERINE VALDEZ, an individual, OCTAVIO VALENCIA, an individual,

FRANCISCO VARGAS, an individual, ROSA VARGAS, an individual, GEORGE VAUGHN,

an individual, CHRIS VERANO an individual, CYNTHIA VERANO, an individual, VICTOR

VIDAS, an individual, CHERYL VIDAS, an individual, DAVID WALTERS, an individual,

ELIZABETH WALTERS, an individual, RICHARD WANN, an individual, BOBBI LI WANN,

an individual, JAMES WELSCH, an individual, TERRI WELSCH, an individual, ELVA

WHITE an individual, BRENT WOODWARD, an individual, MICHELE WOODWARD, an

individual, and DEBORAH ZOTTI, an individual, (collectively the "**Purchaser Plaintiffs**") sue

defendants EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign

corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT

S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign

corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS,

CASE NO.: 09-20657-CIV-GOLD/McALILEY

INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE

MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, FREDERICK ELLIOTT, an individual, and DEREK ELLIOTT, an individual, (collectively, "**Defendants**") and states:

## INTRODUCTION

1.       As recent events make clear, some people are very greedy.  They will stop at nothing to scam someone of their money.  Their singular purpose in life is to make a buck, regardless of who, or how many, get hurt in the process.  Unfortunately, this case is one more example of what happens when the pursuit of the almighty dollar is separated from basic notions of right and wrong.  In this case, two so-called businessmen and expatriate Canadians, Frederick Elliott ("**Frederick**") and his son, Derek Elliott ("**Derek**"), conjured up a series of investment vehicles through which investors throughout the United States could purchase real estate interests in luxury vacation properties in the Dominican Republic.  Father and son, now residing permanently in the Dominican Republic, promised the Purchaser Plaintiffs and many others like them, inside and outside the United States, steady and predictable double-digit returns on what they represented was "safe" real estate investments.  Instead, the father and son pocketed the money and used it to finance a lavish lifestyle.  In what has truly become a sad cliché, Frederick and Derek misused the Purchaser Plaintiffs' hard-earned money to finance fanciful Hollywood productions, produce self-promotional videos, purchase a half-a-million-dollar yacht, and pay-off personal gambling debts in Las Vegas, among other things.  In total, the Elliotts received over $170,000,000.00 of investors' monies.

2.       Then, adding insult to injury, when the Purchaser Plaintiffs began to question Frederick and Derek about the nature and future of their investments, Frederick and Derek —as

fraudsters often do—responded with threats and intimidation.  The Elliotts threatened that if purchasers, like the victimized Purchaser Plaintiffs, pursued their legal rights, they would lose everything because Frederick, Derek and their companies were judgment proof.  In fact in an e-mail directed to purchasers inside and outside the United States, Frederick clearly stated that: "We have received information to the effect that, unfortunately, some clients are considering lawsuits to enhance their positions…. Accordingly, and on the instructions of legal counsel, we are taking the position that any clients who initiate lawsuits will not have available to them any of the restructuring options that we have offered or will offer … *The result will be that the fractional interests attached to such notes not paid in full will likely be forfeited. Since it is very unlikely that such litigious clients will be able to penetrate our judgment proof structure, they will likely lose their entire investments*."  *See* Composite Exhibit "A," E-mail from Frederick Elliott dated August 21, 2008 at pg. 1.

    3.    It is now clear that to protect their ill-gotten gains, Frederick and Derek created a complex web of offshore companies, trusts, corporate entities, and shell corporations, all with the stated purpose of ensuring that they would be unreachable under the law for their unlawful activities and thus, in their minds, be "judgment proof."  In fact, Derek himself described this structure in response to a simple request that they confirm (with documentation) that they indeed owned the two resort properties at issue in this case.  Derek responded that "[o]f course Elliott entities own and control both hotels … However on the advice of our legal counsel… we cannot provide you with detailed information on our ownership structure. *The reason is that we have a complex structure designed to insulate these properties from claims and lawsuits.  These companies are completely judgment proof.*  We are not able to provide details on the multi jurisdictional corporate and trust ownership structure without compromising this protection."

*See* Composite Exhibit "A," E-mail from Derek Elliott dated August 15, 2008 at Pp. 2-3..

4.      In light of these threats of lost investments, Frederick and Derek's taunting statements that they are judgment proof and will not have to answer for their actions, and Frederick and Derek's efforts to frighten and coerce purchasers not to pursue their legal rights, this action seeks to bring a measure of comfort and security to the victimized Purchaser Plaintiffs and those that have been similarly injured.

5.      This is a civil action seeking, among other things, compensatory and exemplary damages in excess of $75,000.00 brought to redress a pattern of racketeering activity and tortious misconduct on Defendants' part targeting persons throughout the United States, including Florida.  The allegations detailed below involve a scheme to defraud, including but not limited to mail and wire fraud, the laundering of millions of dollars of illegitimately diverted funds at financial institutions and through other corporations, and the conversion of such funds into real property, personal property, and businesses, together constituting an illicit enterprise funded and maintained with ill-gotten gains in violation of the Federal Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.*, and Florida statutory and common law.

## PARTIES, JURISDICTION, AND VENUE

6.      The following Purchaser Plaintiffs are residents of the United States and otherwise *sui juris*.  Purchaser Plaintiffs are approximately one hundred and sixty out of several thousand purchasers of the various real estate products sold by Defendants.  Collectively, the victimized Purchaser Plaintiffs own all the various real estate products offered for sale by the Defendants.

a.      Plaintiff, Salvador Aguilar, is a citizen of the United States, residing in Oxnard, California.  Plaintiff Aguilar purchased 1 Fractional Passport Juan

CASE NO.: 09-20657-CIV-GOLD/McALILEY

Dolio in the amount of $28,125; 1 Fractional Passport Juan Dolio in the amount of $33,750; 3 Fractional Juan Dolio in the amount of $50,625 and 1 Fractional Passport Juan Dolio in the amount of $10,546.88.

b.  Plaintiff, Martha Aguilar, is a citizen of the United States, residing in Oxnard, California.  Plaintiff Aguilar purchased 1 Residence Passport in the amount of $12,656.25.

c.  Plaintiffs, Salvador and Martha Aguilar, are citizens of the United States, residing in Oxnard, California.  Plaintiffs Salvador and Martha Aguilar jointly purchased 1 Residence Maxim Bungalows Cofresi in the amount of $30,690.

d.  Plaintiffs, Cesar Altamirano and Angeles Arango-Carreno, are citizens of the United States residing in Petaluma, California.  Plaintiffs Altamirano and Arango-Carreno jointly purchased 4 Fractional Passport Juan Dolio in the amount of $112,500.

e.  Plaintiff, Sherwin Aniciete, is a citizen of the United States residing in Vallejo, California.  Plaintiff Aniciete purchased 1 Residence Maxim Bungalows Cofresi in the amount of $10,000.

f.  Plaintiff, Aracelis Farias, is a citizen of the United States residing in Vallejo, California.  Plaintiff Aniciete purchased 1 Residence Maxim Bungalows Juan Dolio in the amount of $10,000.

g.  Plaintiffs, Sherwin Aniciete and Aracelis Farias, are citizens of the United States residing in Vallejo, California.  Plaintiffs Aniciete and Farias jointly

purchased 1 Residence Maxim Bungalows Cofresi in the amount of $46,035.

h.   Plaintiff, Kathy Avilla, is a citizen of the United States residing in Sebastopol, California.  Plaintiff Avilla purchased 1 Fractional Juan Dolio in the amount of $13,500; 14 Fractional Passport in the amount of $140,000; 1 Fractional Cofresi in the amount of $250,000; 3 Fractional Maxim Bungalow Cofresi in the amount of $138,105; and 2 Fractional Maxim Bungalow King in the amount of $86,490.

i.   Plaintiff, Linda Bartlett, is a citizen of the United States residing in Novato, California.   Plaintiff Bartlett purchased 1 Residence Maxim Bungalow in the amount of $46,035 and 4 Residence Bungalows, in the amount of $195,300.

j.   Plaintiff, Thomas Benedict, is a citizen of the United States, residing in Francis, Utah.  Plaintiff Benedict purchased 2 Residence Juan Dolio in the amount of $33,750.00; 2 Residence Juan Dolio in the amount of $28,125.00; and 2 Passport Residence Juan Dolio in the amount of $28,125.00.

k.   Plaintiffs, Winifred Biggs and Loran Biggs, are citizens of the United States, residing in Visalia, California.  Plaintiffs Biggs jointly purchased 2 Residence Maxim Bungalow Juan Dolio in the amount of $84,800.00, 1 Residence Maxim Bungalow Juan Dolio; and 1 Residence Maxim Bungalow in the amount of  $56,600.00.

l.      Plaintiffs, Rodger Bonite and Jean Bonite, are citizens of the United States, residing in Petaluma, California.   Plaintiffs Bonite jointly purchased 4 Residence Passport EMI Sun Village in the amount of $90,000.00 and 8 Residence Cofresi in the amount of $80,000.

m.      Plaintiff, Gary Boutin, is a citizen of the United States, residing in Salem, New Hampshire.  Plaintiff Boutin purchased 1 Fractional Passport Juan Dolio in the amount of $10,000.00.

n.      Plaintiff, William Boyce, III, is a citizen of the United States, residing in Woodland, Utah.  Plaintiff Boyce purchased 1 Fractional Passport Juan Dolio in the amount of $42,188; 1 Residence Passport Juan Dolio in the amount of  $13,218.75, 1 Fractional Passport Juan Dolio in the amount of $10,546.88, and 1 Fractional Passport Juan Dolio in the amount of $10,546.88.

o.      Plaintiffs, Randy Braithwaite and Ronda Braithwaite, are citizens of the United States, residing in Tulare, California.  Plaintiffs Braithwaite jointly purchased 4 Fractional Passport Juan Dolio in the amount of $112,500.00.

p.      Plaintiff, Frances Broughton, is a citizen of the United States, residing in Camarillo, California.  Plaintiff Frances Broughton purchased 1 Residence Juan Dolio in the amount of $83,500 and 2 Fractional Maxim Bungalows Cofresi in the amount of $65,100.

q.      Plaintiff, Alan Burica, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Burica purchased 1 Residence EMI Juan Dolio in the amount of $20,000.

r.    Plaintiffs, Steven Cabezud and Janet Cabezud, are citizens of the United States, residing in Santa Rosa, California.  Plaintiffs Cabezud jointly purchased 13 Fractional EMI Juan Dolio in the amount of $195,000.00, and 4 Fractional EMI Project X Juan Dolio in the amount of $40,000.00; 6 Residence Passport Juan Dolio in the amount of $108,000.0; 1 Residence Juan Dolio in the amount of $30,000; 2 Residence Cofresi in the amount of $25,000; and 2 Fractional Passport Juan Dolio in the amount of $28,125.00.

s.    Plaintiff, Steven Cabezud, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Cabezud purchased 1 Residence EMI Juan Dolio in the amount of $20,000; 1 Residence EMI Juan Dolio in the amount of $25,000; 1 Fractional Maxim Bungalow Cofresi in the amount of $25,000; 1 Fractional Maxim Bungalow in the amount of $10,000 and 1 EMI Residence in the amount of $60,000.

t.    Plaintiffs, Steven Cagle and Sharon Roberts-Cagle, are citizens of the United States, residing in Santa Rosa, California.  Plaintiffs Cagle jointly purchased 2 Residence Passport Juan Dolio in the amount of $47,000 and 3 Residence Maxim Bungalow Cofresi in the amount of $129,735.00.

u.    Plaintiff, James Catledge, is a citizen of the United States, residing in Henderson, Nevada.  Plaintiff Catledge purchased 34 Residence Juan Dolio in the amount of $478,125; 2 Residence Juan Dolio in the amount of $21,093.76; 14 Fractional Passport Juan Dolio in the amount of $393,750; 2 Fractional Passport Juan Dolio in the amount of $67,500; 1 Fractional

Passport Juan Dolio in the amount of 37,500; and 26 Fractional Juan Dolio in the amount of $520,000.

v.      Plaintiff, Victor Chavez, is a citizen of the United States, residing in Delano, California.  Plaintiff Patricia Chavez is a resident of the United States residing in Delano, California.  Plaintiffs Chavez jointly purchased 1 Fractional Maxim Bungalow Cofresi in the amount of $30,690 and 1 Fractions Sun Village Juan Dolio in the amount of $56,250.

w.      Plaintiffs, Paul Christensen and Michelle Christensen, are citizens of the United States, residing in Francis, Utah.  Plaintiffs Christensen jointly purchased 2 Residence Passport Cofresi in the amount of $24,000.00.

x.      Plaintiff, Paul Christensen, is a citizen of the United States, residing in Francis, Utah.  Plaintiff Christensen purchased 1 Residence Maxim Bungalows Juan Dolio, in the amount of $10,000.00.

y.      Plaintiff, Michelle Christensen, is a citizen of the United States, residing in Francis, Utah.  Plaintiff Christensen purchased 1 Residence Maxim Bungalows Juan Dolio in the amount of $10,000.00.

z.      Plaintiffs, Christopher Clendenning and Christine Clendenning, are citizens of the United States, residing in Santa Rosa, California.  Plaintiffs Clendenning jointly purchased 4 Fractional Passport Juan Dolio in the amount of $112,500.

aa.     Plaintiff, Christopher Clendenning, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Clendenning purchased 2 Fractional Juan Dolio in the amount of $20,000.00; 1 Fractional Juan

CASE NO.: 09-20657-CIV-GOLD/McALILEY

Dolio in the amount of $13,350.00; and 2 Fractional Passport Juan Dolio in the amount of $56,250.00.

bb.   Plaintiff, Christine Clendenning, is a citizen of the United States, residing in Santa Rosa, California.   Plaintiff Clendenning purchased 1 Fractional Passport Juan Dolio in the amount of $12,500.00 and 3 Fractional Passport Juan Dolio in the amount of $84,375.00.

cc.   Plaintiffs, Antwon Cole and Angela Cole, are citizens of the United States, residing in Santa Rosa, California.   Plaintiffs Cole jointly purchased 1 Fractional Passport Juan Dolio in the amount of $42,188.00 and 1 Fractional Passport Juan Dolio in the amount of $10,546.88.

dd.   Plaintiff, Aaron Crotty, is a citizen of the United States, residing in Santa Rosa, California.   Plaintiff Crotty purchased 1 Fractional Maxim Bungalow Juan Dolio in the amount of $36,618.75.

ee.   Plaintiffs, Margaret Currie and MaryAnn Currie, are citizens of the United States, residing in Santa Rosa, California.   Plaintiffs Currie jointly purchased 2 Fractional Passport Juan Dolio in the amount of $56,250.00.

ff.   Plaintiff, Margaret Currie, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Currie purchased 1 Residence Cofresi in the amount of $15,000.00; and 2 Fractional Passport Juan Dolio in the amount of $56,250.00.

gg.   Plaintiff, MaryAnn Currie, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Currie purchased 15 Fractional Passport Juan Dolio in the amount of $189,843.75; 1 Residence Passport Juan

CASE NO.: 09-20657-CIV-GOLD/McALILEY

Dolio in the amount of $10,546.88; 2 Residence Passport Juan Dolio in the amount of $21,093.76; and 4 Fractional Cofresi in the amount of, $60,000.

hh.    Plaintiff, Gabriel Diaz, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Diaz purchased 1 Fractional EMI Juan Dolio in the amount $20,000.00; 8 Fractional Passport Juan Dolio in the amount of $150,000.00, and 6 Fractional Passport Juan Dolio in the amount of $253,128.00.

ii.    Plaintiff, Geoffrey Dugmore, is a citizen of the United States, residing in Petaluma, California.  Plaintiff Dugmore purchased 1 Fractional Passport Juan Dolio in the amount of $42,188 and 1 Fractional Maxim Bungalow Juan Dolio in the amount of $28,830.00.

jj.    Plaintiff, Maria Juana Escobedo, is a citizen of the United States, residing in Santa Rosa California.   Plaintiff Escobedo purchased 1 Residence Maxim Bungalow Cofresi in the amount of $43,245.

kk.    Plaintiff, Judith Ferguson-Johnson, is a citizen of the United States, residing in South Lake Tahoe, California.   Plaintiff Ferguson-Johnson purchased 8 Fractional EMI Sun Village Juan Dolio in the amount of $120,000.00, and 8 Fractional EMI Sun Village Juan Dolio in the amount of $80,000.00.

ll.    Plaintiffs, Rick Francom and Karen Francom, are citizens of the United States, residing in West Valley City, Utah.  Plaintiffs Francom jointly purchased 4 Fractional Passport Juan Dolio in the amount of $50,625.00.

mm. Plaintiff, Rick Francom, is a citizen of the United States, residing in West Valley City, Utah.   Plaintiff Francom purchased 1 Fractional Maxim Bungalow Cofresi in the amount of $28,830.00.

nn. Plaintiff, Linda Frye, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Frye purchased 18 Fractional Passport Juan Dolio in the amount of $180,000 and 1 Residence Maxim Bungalow Cofresi in the amount of $139,500.00.

oo. Plaintiff, Adan Galvan, is a resident of the United States, residing in Healdsburg, California.  Plaintiff Galvan purchased 6 Fractional EMI Sun Village Juan Dolio in the amount of $100,000.00; 13 Residence Passport Juan Dolio in the amount of $325,000.00; and 1 $35,000.00 purchase converted into 2 Fractionals at Cofresi for the amount of $123,690.00 plus an Elliott Promissory Note in the amount of $11,310.

pp. Plaintiffs, Lamberto Garcia and Maly Garcia, are citizens of the United States, residing in Healdsburg, California.   Plaintiffs Garcia jointly purchased 2 Fractional EMI Sun Village Juan Dolio in the amount of $20,000.

qq. Plaintiff, Lamberto Garcia, is a citizen of the United States, residing in Healdsburg, California.  Plaintiff Garcia purchased 1 Fractional Passport Juan Dolio in the amount of $28,125.00 and 2 Residence Maxim Bungalow Cofresi in the amount of $57,660.

CASE NO.: 09-20657-CIV-GOLD/McALILEY

rr.     Plaintiff, Maly Garcia, is a citizen of the United States, residing in Healdsburg, California.   Plaintiff Garcia purchased 1 Fractional Sun Village Juan Dolio in the amount of $10,000.

ss.     Plaintiffs, Yves Gervais and Jaime Gervais, are citizens of the United States, residing in Mill Valley, California.   Plaintiffs Gervais jointly purchased 8 Fractional Passport Juan Dolio in the amount of $423,000.

tt.     Plaintiffs, Fernando Gonzalez and Lisbeth Gonzalez, are citizens of the United States, residing in Queen Creek, Arizona.   Plaintiffs Gonzalez jointly purchased 4 Residence Passport Juan Dolio in the amount of $50,505.00, and 6 Fractional Passport Juan Dolio in the amount of $63,281.28.

uu.     Plaintiff, Finy Gonzalez, is a resident of the United States, residing in Sebastopol, California.  Plaintiff Gonzalez purchased 3 Fractional Passport Juan Dolio in the amount of $168,750; 10 Fractional Passport Juan Dolio in the amount of $105,468.80 and 2 Residence Maxim Bungalow Cofresi in the amount of $65,100.

vv.     Plaintiff, Santos Gonzalez, is a resident of the United States, residing in Santa Rosa, California.   Plaintiff Gonzalez purchased 1 Fractional Sun Village Juan Dolio in the amount of $67,500.

ww.     Plaintiff, Miles Grant, is a citizen of the United States, residing in San Francisco, California.   Plaintiff Grant purchased of 1 Residence Juan Dolio in the amount of $21,093.76.

CASE NO.: 09-20657-CIV-GOLD/McALILEY

xx.     Plaintiff, Sharon Brahms, is a citizen of the United States, residing in San Francisco, California.  Plaintiff Brahms purchased 19 Residence Passport Juan Dolio in the amount of $200,390.72; 1 Residence Maxim Bungalow Cofresi, $28,830, and 1 Residence Maxim Bungalow Cofresi in the amount $93,000.

yy.     Plaintiff, Manuela Gutierrez is a citizen of the United States and Adan Gutierrez is a resident of the United States, both residing in Santa Rosa, California.  Plaintiffs Gutierrez jointly purchased 1 Residence Juan Dolio in the amount of $70,312.00 and 1 Maxim Bungalows Cofresi in the amount $97,650.

zz.     Plaintiff, Manuela Gutierrez, is a citizen of the United States residing in Santa Rosa, California.  Plaintiff Gutierrez purchased 1 Residence Maxim Bungalows Cofresi in the amount of $48,825.

aaa.    Plaintiffs, Gary Gyurkovitz and Diana Gyurkovitz, are citizens of the United States, residing in Hopkinsville, Kentucky.  Plaintiffs Gyurkovitz jointly purchased 4 Fractional EMI Village Juan Dolio in the amount of $80,000 and 1 Fractional EMI Sun Village Juan Dolio in the amount of $24,240.

bbb.    Plaintiff, George Hall is a citizen of the United States residing in San Pablo, California.  Plaintiff Hall purchased 1 Fractional EMI Sun Village Juan Dolio in the amount of $15,000; 1 Residence Juan Dolio in the amount of $210,937.50; 1 Residence Maxim Bungalows Cofresi in the

amount of $32,550; and 1 Residence Maxim Bungalows Cofresi in the amount of $61,380.

ccc. Plaintiff, Lawrence Henry, is a citizen of the United States, residing in Salem, New Hampshire. Plaintiff Henry purchased 1 Fractional Passport Juan Dolio in the amount of $50,626.

ddd. Plaintiff, Cynthia Henry, is a citizen of the United States, residing in Salem, New Hampshire. Plaintiff Henry purchased 1 Fractional Maxim Bungalow Passport Juan Dolio in the amount of $12,500.

eee. Plaintiff, Miguel Cortes Hernandez, is a citizen of the United States, residing in Petaluma, California. Plaintiff Maria Fierro Hernandez is a citizen of the United States. Plaintiffs Hernandez jointly purchased 1 Fractional Passport Juan Dolio in the amount of $28,125.00 and 1 Fractional Sun Village Juan Dolio in the amount of $81,000.

fff. Plaintiff, Miguel Cortes Hernandez, is a citizen of the United States, residing in Petaluma, California. Plaintiff Hernandez purchased 3 Residence Maxim Bungalow Cofresi in the amount of $138,105.

ggg. Plaintiff, Grace Herrera, is a citizen of the United States, residing in Petaluma, California. Plaintiff Herrera purchased 1 Fractional Sun Village in the amount of $30,000; 14 Residence Juan Dolio in the amount of $147,656.32; and 24 Fractional Passport Juan Dolio in the amount of $240,000.

hhh.   Plaintiffs, Daniel Hixson and Amy Hixson, are citizens of the United States, residing in Springville, Utah.  Plaintiffs Hixson jointly purchased 4 Fractional Passport Juan Dolio in the amount of $202,500.

iii.   Plaintiff, Peter Hoge, is a citizen of the United States, residing in Los Angeles, California.  Plaintiff Hoge purchased Maxim Bungalows Cofresi - Phase I Conversion for 1 Maxim Bungalow Cofresi in the amount of $48,825; 1 Fractional Passport Juan Dolio in the amount of $33,750.00; 1 Residence Passport Juan Dolio in the amount of $28,125.00, and 4 Fractional Sun Village Juan Dolio in the amount of $50,000.

jjj.   Plaintiffs, Ignacio Jacinto and Elia Jacinto, are citizens of the United States, residing in Windsor, California.  Plaintiffs Jacinto jointly purchased 1 Residence Maxim Bungalow Cofresi in the amount of $48,825.00; and 2 Residence Maxim Bungalow Cofresi in the amount of $92,070.

kkk.   Plaintiff, Ignacio Jacinto, is a citizen of the United States, residing in Windsor, California.  Plaintiff Jacinto purchased 1 Fractional Passport Juan Dolio in the amount of $28,125.

lll.   Plaintiff, Peter Jeong, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Jeong purchased 1 Residence Maxim Bungalow Cofresi in the amount of $28,830.00 and 1 Residence Maxim Bungalow Sun Village Juan Dolio in the amount of $30,690; and 8 Fractional EMI Sun Village Juan Dolio in the amount of $120,000.

mmm.   Plaintiff, Evelyn Jones, is a citizen of the United States, residing in Tulare, California.  Plaintiff Jones purchased 1 Residence Passport Juan Dolio in the amount of $12,656.25.

nnn.   Plaintiffs, Donna Kuck and Richard Phillips, are citizens of the United States, residing in Concord, California.  Plaintiffs Kuck and Phillips jointly purchased 5 Fractional Passport Juan Dolio in the amount of $93,750.

ooo.   Plaintiff, Donna Kuck, is a citizen of the United States, residing in Concord, California.  Plaintiff Kuck purchased 2 Fractional Passport Juan Dolio in the amount of $25,000; and 1 Fractional Passport Juan Dolio in the amount of $10,000.

ppp.   Plaintiff, Sheila Kuck, is a citizen of the United States, residing in Concord, California.  Plaintiff Kuck purchased 2 Fractional EMI Village Juan Dolio in the amount of $30,000.

qqq.   Plaintiff, Bryan Lamb, is a citizen of the United States.  Plaintiff, Susan Lamb, is a resident of the United States, both residing in Eagle, Idaho. Plaintiffs Lamb jointly purchased 40 Fractional Passport Juan Dolio in the amount of $500,000.00; 10 Fractional Juan Dolio in the mount of $160,000.00, and 4 Fractional Passport Sun Village Juan Dolio in the amount of $40,000.

rrr.   Plaintiff, Bryan Lamb, is a citizen of the United States, residing in Eagle, Idaho.  Plaintiff Lamb purchased 3 Maxim Bungalows Cofresi in the amount of $146,475.

sss.    Plaintiff, Susan Lamb, is a resident of the United States, residing in Eagle, Idaho.  Plaintiff Lamb purchased 5 Residence Maxim Bungalows Juan Dolio in the amount of $50,000; 1 Residence Passport Juan Dolio in the amount of $12,000; 1 Fractional Passport Juan Dolio in the amount of $28,125.00, and 1 Fractional Passport Juan Dolio in the amount of $33,750.

ttt.    Plaintiff, Lingzi Li, is a resident of the United States, residing in Goleta, California.  Plaintiff Li purchased 3 Residence Passport Sun Village Juan Dolio in the amount of $31,640.64; 3 Fractional Passport Juan Dolio in the amount of $151,878 and 2 Residence Maxim Bungalow Cofresi in the amount of $86,490.

uuu.    Plaintiffs, Louis (Tony) Looper and Jill Looper, are citizens of the United States, residing in Oakley, California.  Plaintiffs Looper jointly purchased $201,660 in Elliott products.

vvv.    Plaintiffs, Eugene Mancebo and Geraldine Mancebo, are citizens of the United States, residing in Tulare, California.  Plaintiffs Mancebo jointly purchased 2 Fractional Passport Juan Dolio in the amount of $56,250; 2 Fractional Passport Juan Dolio in the amount of $25,312.50; 2 Fractional Passport Juan Dolio in the amount of $26,437.50, and 36 Fractional Passport Juan Dolio in the amount of $379,687.68.

www.    Plaintiff, Shawn Mancebo, is a citizen of the United States, residing in Tulare, California.  Plaintiff Mancebo purchased 2 Fractional Passport Sun Village Juan Dolio in the amount of $21,093.76.

xxx.   Plaintiffs, Raul Mancilla and Nora Mancilla, are residents of the United States, residing in Wasco, California.   Plaintiffs Mancilla jointly purchased 6 Fractional Passport Juan Dolio in the amount of $211,500.

yyy.   Plaintiff, Raul Mancilla, is a resident of the United States, residing in Wasco, California.   Plaintiff Mancilla purchased 1 Residence Maxim Bungalow Cofresi in the amount of $30,690.

zzz.   Plaintiff, Michael McGirr, is a citizen of the United States, residing in San Francisco, California.   Plaintiff McGirr purchased $140,000 Cofresi Residence converted to $124,640, plus a $15,380 Elliott Promissory Note; 2 $100,000 Cofresi Residence converted to $93,930, plus a $6,070.00 Elliott Promissory Note; 3 Residence Passport Juan Dolio in the amount of $101,250.00, 4 Residence Juan Dolio in the amount of  $64,000; 5 Residence Juan Dolio in the amount of $66,750; 5 Residence Passport Juan Dolio in the amount of $66,750; 1 Residence Passport Juan Dolio in the amount of $12,500, and 4 Residence Passport Juan Dolio in the amount of $40,000.

aaaa.   Plaintiffs, Rueben Mejia and Rama Mejia, are citizens of the United States, residing in Santa Rosa, California.   Plaintiffs Mejia jointly purchased 1 Residence Juan Dolio in the amount of $325,000 and 3 Residence Maxim Bungalows Cofresi in the amount of $86,490.

bbbb.   Plaintiff, Rueben Mejia, is a citizen of the United States, residing in Santa Rosa, California.   Plaintiff Mejia purchased 1 Residence Maxim Bungalow Cofresi in the amount of $30,000 converted to $28,830, plus a

$1,170 Elliott Promissory Note; and 3 Residence Maxim Bungalows Cofresi in the amount of $86,490.

cccc.  Plaintiff, Gloria Moore, is a citizen of the United States, residing in Novato, California.  Plaintiff Moore purchased 20 Fractional Passport Juan Dolio in the amount of $200,000; 1 Fractional Juan Dolio in the amount of $10,000; 1 Maxim Residence Cofresi in the amount of $15,600; and 1 Fractional Passport Juan Dolio in the amount of $55,689.

dddd.  Plaintiff, Marla Moore, is a citizen of the United States, residing in Novato, California.  Plaintiff Moore purchased Elliott products in the amount of $20,000.

eeee.  Plaintiff, Jeff Morgan, is a citizen of the United States, residing in San Francisco, California.  Plaintiff Morgan purchased 7 Fractional Passport Juan Dolio in the amount of $105,000.

ffff.  Plaintiff, Barbara Nagel, is a citizen of the United States, residing in San Ramon, California.  Plaintiff Nagel purchased 7 Fractional Passport Juan Dolio in the amount of $126,000; 1 Fractional Passport Juan Dolio in the amount of  $15,000; 1 Residence Passport Juan Dolio in the amount of $18,000; 1 Residence Maxim Bungalow Cofresi in the amount of $28,830; and 1 Residence Maxim Bungalow in the amount of $30,690.

gggg.  Plaintiffs, Dallas Nessen and DeeAnn Nessen, are citizens of the United States, residing in Kaysville, Utah.  Plaintiffs Nessen jointly purchased 2 Fractional Passport Juan Dolio in the amount of $20,000; and 1 Residence Bungalow Juan Dolio in the amount of $48,825.

hhhh.   Plaintiff, DeeAnn Nessen, is a citizen of the United States, residing in Kaysville, Utah.   Plaintiff Nessen purchased 1 Residence Maxim Bungalows Juan Dolio in the amount of $10,000; 1 Fractional Juan Dolio $16,000, and 1 Residence Maxim Juan Dolio in the amount of $16,000.

iiii.   Plaintiff, Dallas Nessen, is a citizen of the United States, residing in Kaysville, Utah.   Plaintiff Nessen purchased 1 Residence Maxim Bungalows Cofresi in the amount of $43,245; 1 Residence Maxim Bungalows Juan Dolio in the amount of $12,000; and 1 Residence Maxim Bungalows Juan Dolio in the amount of $10,000.

jjjj.   Plaintiff, Kent Neville, is a citizen of the United States, residing in Morgan, Utah.  Plaintiff Neville purchased 2 Fractional Passport Juan Dolio in the amount of  $25,000; 5 Fractional Passport Juan Dolio in the amount of $50,000; 1 Fractional Bungalow EMI Juan Dolio in the amount of $18,000; and 1 Residence Maxim Bungalows Cofresi in the amount of $48,825.

kkkk.   Plaintiff, Linda Neville, is a citizen of the United States, residing in Morgan, Utah.   Plaintiff Neville purchased 2 Fractional Passport Juan Dolio in the amount of $25,000; 5 Fractional Passport Juan Dolio in the amount of $50,000; and 1 Fractional Bungalow EMI Village Juan Dolio in the amount of $18,000.

llll.   Plaintiff, Paul Nielsen, is a citizen of the United States, residing in Orem, Utah.  Plaintiff Nielsen purchased 1 Fractional Passport Juan Dolio in the

amount of $56,250; and 2 Residence Maxim Bungalow Cofresi in the amount of $57,660.

mmmm. Plaintiffs, Cory Nilsson and Kirsten Nilsson, are citizens of the United States, residing in Springville, Utah. Plaintiffs Nilsson jointly purchased 1 Fractional Juan Dolio in the amount of $57,515.64; and 1 Fractional Founder's Phase Juan Dolio in the amount of $84,376.

nnnn. Plaintiff, Cory Nilsson, is a citizen of the United States, residing in Springville, Utah. Plaintiff Nilsson purchased 1 Fractional Passport Juan Dolio in the amount of $115,000.

oooo. Plaintiffs, James Osborn and Alicia Osborn, are citizens of the United States, residing in Sacramento, California. Plaintiffs Osborn jointly purchased 8 Fractional Passport Juan Dolio in the amount of $84,375.04.

pppp. Plaintiff, Kathy Ova, is a citizen of the United States, residing in Ogden, Utah. Plaintiff Ova purchased 1 Fractional Passport Juan Dolio in the amount of $12,656.25; 5 Residence Maxim Bungalows Cofresi in the amount of $162,750; 1 Residence Maxim Bungalow in the amount of $115,320, 1 Residence Maxim Cofresi in the amount of $30,690; and 1 Maxim Bungalows Juan Dolio in the amount of $12,500.

qqqq. Plaintiff, Gary Peterson, is a citizen of the United States, residing in Ogden, Utah. Plaintiff Peterson purchased 1 Fractional Passport Juan Dolio in the amount of $12,000; 1 Fractional Passport Juan Dolio in the amount of $10,000; 1 Residence Maxim Bungalow Cofresi in the amount of $46,035; 1 Residence Maxim Bungalow Cofresi in the amount of

$92,070; 1 Maxim Bungalows Residence Juan Dolio $10,000; and 19 Fractional Maxim Bungalows Juan Dolio in the amount of $237,500.

rrrr.   Plaintiff, Shirleen Peterson, is a citizen of the United States, residing in Ogden, Utah.   Plaintiff Peterson purchased 1 Fractional Passport Juan Dolio in the amount of $10,000.

ssss.   Plaintiff, Mildred Phillips, is a citizen of the United States, residing in San Francisco, California.  Plaintiff Phillips purchased 5 Residence EMI Sun Village Juan Dolio; 5 Residence EMI Sun Village Juan Dolio in the amount of $150,000; 3 Fractional EMI Sun Village Juan Dolio in the amount of $45,000; and 15 Fractional EMI Sun Village Juan Dolio in the amount of $250,000.

tttt.   Plaintiffs, Randy Polatis and Joyce Polatis, are citizens of the United States, residing in Pingree, Idaho.  Plaintiffs Polatis jointly purchased 4 Passport Sun Village Juan Dolio in the amount of $42,187.52; and $60,750.00 for Residence Phase Three purchase.

uuuu.   Plaintiffs, Adolfo Ramirez and Clementina Garcia, are residents of the United States, residing in Santa Rosa, California.  Plaintiffs Ramirez and Garcia jointly purchased 5 Fractional Passport Juan Dolio in the amount of $125,000.

vvvv.   Plaintiff, Adolfo Ramirez, is a resident of the United States, residing in Santa Rosa, California.  Plaintiff Ramirez purchased 1 Fractional Passport Juan Dolio in the amount of $10,546.88.

wwww.      Plaintiff, Clementina Garcia, a resident of the United States, residing in Santa Rosa, California.  Plaintiff Garcia purchased 1 Fractional Passport Juan Dolio in the amount of $13,218.75.

xxxx.   Plaintiff, Diane Ingalls Reid, is a citizen of the United States, residing in Park City, Utah.   Plaintiff Reid purchased 6 Residence Passport Juan Dolio in the amount of $63,281.28; 1 Residence Passport Juan Dolio in the amount of  $13,218.75; 1 Residence Passport Juan Dolio in the amount of $10,546.88; and 4 Fractional Passport Juan Dolio in the amount of $168,752.

yyyy.   Plaintiffs, Alberto Reyes and Rozalba Manzo de Reyes, are residents of the United States, residing in Santa Rosa, California.  Plaintiffs Reyes jointly purchased 1 Fractional Passport Juan Dolio in the amount of $30,000.

zzzz.   Plaintiff, Alberto Reyes, is a resident of the United States, residing in Santa Rosa, California.  Plaintiff Reyes purchased 1 Fractional EMI Sun Village Juan Dolio in the amount of $15,000.

aaaaa.  Plaintiff, Daniel Reyes is a citizen of the United States.  Imelda Reyes is a resident of the United States, both residing in Santa Rosa, California.  Plaintiffs Reyes jointly purchased $40,781.25 converted to 2 Fractional Juan Dolio in the amount of $37,500.

bbbbb. Plaintiff, Daniel Reyes, is a resident of the United States, residing in Santa Rosa, California.  Plaintiff Reyes purchased 1 Fractional Passport Juan Dolio in the amount of $30,000.

ccccc. Plaintiffs, Rafael Reyes and Angela Reyes, are citizens of the United States, residing in Santa Rosa, California. Plaintiffs Reyes jointly purchased 4 Fractional Passport Juan Dolio in the amount of $75,000; and 2 Passport Residence Juan Dolio in the amount of $101,250.

ddddd. Plaintiffs, Sonia Moreno Reyes and Alfredo Moreno, are citizens of the United States, residing in Santa Rosa, California. Plaintiffs Reyes jointly purchased 2 Fractionals Juan Dolio in the amount of $35,000 converted to $30,690.00 plus $4,310.00 in an Elliott Promissory Note and 1 Fractional Maxim Bungalows Cofresi in the amount of $30,690.

eeeee. Plaintiff, Francisco Reyes Espinosa, is a citizen of the United States, residing in Santa Rosa, California. Plaintiff Reyes purchased $100,000.00 Residence EMI Sun Village Juan Dolio converted to $189,720.00 Residence Maxim Bungalows Cofresi; 4 Fractional Passport Juan Dolio in the amount of $514,400; and ½ Fractional Maxim Bungalows Cofresi in the amount of $16,250.

fffff. Plaintiff, Vicente Reyes Espinosa, is a citizen of the United States, residing in Santa Rosa, California. Plaintiff Reyes purchased $100,000.00 Residence EMI Sun Village Juan Dolio converted to $189,720.00 Residence Maxim Bungalows Cofresi; 1 Fractional Passport Juan Dolio in the amount of $28,125; 6 Fractional Passport Juan Dolio in the amount of $202,500; 1 Fractional Passport Juan Dolio in the amount of $13,218.75; 3 Residence Passport Juan Dolio in the amount of $31,640.64; and 1 Fractional Passport Juan Dolio in the amount of $30,000.

ggggg. Plaintiff, Terri Riendel, is a citizen of the United States, residing in Stockton, California.  Plaintiff Riendel purchased 3 Fractional Passport Juan Dolio in the amount of $31,640.64.

hhhhh. Plaintiffs, Martin Rivera and Leonila Rivera, are citizens of the United States, residing in Stockton, California.  Plaintiffs Rivera jointly purchased 1 Residence Maxim Bungalow Cofresi in the amount of $28,830.00; and 4 Fractional Passport Juan Dolio in the amount of $225,000.

iiiii.  Plaintiffs, David Rocheford and Danielle Rocheford, are citizens of the United States, residing in Westminster, Massachusetts.  Plaintiffs Rocheford jointly purchased 1 Residence Maxim Bungalows Juan Dolio in the amount of $60,000.00; 1 Fractional Passport Juan Dolio in the amount of  $10,546.88; 1 Residence Passport Maxim Bungalows Cofresi in the amount of  $10,546.88; 2 Fractional Passport Maxim Bungalows Juan Dolio in the amount of $56,250; and 1 Residence Maxim Bungalow Cofresi in the amount of $32,433.75.

jjjjj.  Plaintiff, Tonya Royston, is a citizen of the United States, residing in Stockton, California.  Plaintiff Royston purchased. 8 Fractional Passport Juan Dolio in the amount of $200,000 converted to $198,750; and 4 Fractional Passport Juan Dolio in the amount of $75,000.

kkkkk. Plaintiff, Mai Shin Lai, is a citizen of the United States, residing in Petaluma, California.  Plaintiff Shin Lai purchased 18 Fractional Passport Juan Dolio in the amount of $237,937.50; 1 Fractional Passport Juan Dolio in the amount of $12,656.25; 2 Fractional Passport Juan Dolio in the

amount of $105,750; 1 Fractional Passport Juan Dolio in the amount of $10,546.88; 1 Residence Maxim Bungalow Cofresi in the amount of $28,830.00; 1 Residence Maxim Bungalow Cofresi in the amount of $30,690; and 1 Fractional Passport Juan Dolio in the amount of $28,125.

lllll.  Plaintiff, Richard Smith, is a citizen of the United States, residing in Provo, Utah.  Plaintiff Smith purchased 1 Residence Maxim Bungalow Cofresi in the amount of $28,830; and 1 Fractional Passport Juan Dolio in the amount of $33,750.

mmmmm.  Plaintiff, Heidi Smith, is a citizen of the United States, residing in Provo, Utah.  Plaintiff Smith purchased 2 Residence Maxim Bungalow Cofresi in the amount of $57,660.

nnnnn. Plaintiff, Shirley Sola, is a citizen of the United States, residing in Fresno, California.  Plaintiff Sola purchased 3 Fractional Juan Dolio in the amount of $40,000; 1 Residence EMI Sun Village Juan Dolio in the amount of $60,000; and 7 Residence Juan Dolio in the amount of $98,750.

ooooo. Plaintiffs, Norman Sorenson and Robin Frame Sorenson, are citizens of the United States, residing in Provo, Utah.  Plaintiffs Sorenson jointly purchased 3 Residence Maxim Bungalows Cofresi in the amount of $97,650.

ppppp. Plaintiff, Norman Sorenson, is a citizen of the United States, residing in Provo, Utah.  Plaintiff Sorenson purchased 24 Fractional Juan Dolio in the amount of $337,500; 1 Fractional Passport Juan Dolio in the amount of $12,656.25; 15 Fractional Passport Juan Dolio in the amount of

CASE NO.: 09-20657-CIV-GOLD/McALILEY

$210,937.50; 5 Fractional Passport Juan Dolio in the amount of $63,281.25; 2 Residence Passport Juan Dolio in the amount of $25,312.50; and 8 Fractional Passport Juan Dolio in the amount of $135,000.

qqqqq. Plaintiff, Robin Frame Sorenson, is a citizen of the United States, residing in Provo, Utah.  Plaintiff Sorenson purchased 20 Fractional Juan Dolio in the amount of $337,500.00, and 1 Residence Passport Juan Dolio in the amount of $12,656.25.

rrrrr.  Plaintiffs, Roberto Soto and Olga Ramirez Soto, are citizens of the United States, residing in Glen Ellen, California.  Plaintiffs Soto jointly purchased 1 Residence Maxim Bungalow Cofresi in the amount of $43,245.

sssss.  Plaintiffs, Clark Stewart and Myra Stewart, are citizens of the United States, residing in Petaluma, California.   Plaintiffs Stewart jointly purchased 5 Fractional Passport Juan Dolio in the amount of $140,625.

ttttt.  Plaintiff, Clark Stewart, is a citizen of the United States, residing in Petaluma, California. Plaintiff Stewart purchased 1 Fractional Passport Juan Dolio in the amount of $12,656.25; and 1 Fractional Juan Dolio in the amount of $120.000.

uuuuu. Plaintiff, Myra Stewart, is a citizen of the United States, residing in Petaluma, California. Plaintiff Stewart sent a check in the amount of $250,000 to EMI as an IRA rollover.

vvvvv. Plaintiffs, Ryan Stockle and Carly Stockle, are citizens of the United States, residing in Orem, Utah.   Plaintiffs Stockle jointly purchased 1

Fractional Maxim Bungalows Juan Dolio in the amount of $112,500.00; and 1 Residence Maxim Bungalow Cofresi in the amount of $28,830.

wwwww.    Plaintiff, Thomas Stockle, is a citizen of the United States, residing in Corona, California.  Plaintiff Stockle purchased 1 Residence Maxim Bungalow Cofresi in the amount of $46,035; and 1 Residence Maxim Bungalow Cofresi in the amount of $92,070.

xxxxx. Plaintiffs, Larry Teves and Ruth Teves, are citizens of the United States, residing in Tipton, California.  Plaintiffs Teves jointly purchased 2 Fractional Passport Juan Dolio in the amount of $56,250.

yyyyy. Plaintiff, Nancy Thorne, is a citizen of the United States, residing in Springville, Washington.  Plaintiff Thorne purchased 1 Residence EMI Sun Village Juan Dolio in the amount of $210,000.00 which was converted to 5 Fractional Passport Juan Dolio in the amount of $140,625 and 5 Fractional Juan Dolio in the amount of $70,312.50.

zzzzz. Plaintiff, Catherine Valdez, is a citizen of the United States, residing in San Lorenzo, California.  Plaintiff Valdez purchased 1 Fractional Passport Juan Dolio in the amount of $10,000.

aaaaaa. Plaintiff, Octavio Valencia, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Valencia purchased 2 Residence Juan Dolio in the amount of $28,125.00, and 1 Residence Passport Juan Dolio in the amount of  $10,546.88.

bbbbbb.    Plaintiffs, Francisco Vargas and Rosa Vargas, are citizens of the United States, residing in Windsor, California.  Plaintiffs Vargas jointly

purchased 3 Fractional Passport Juan Dolio in the amount of $39,656.25; 2 Fractional Passport Juan Dolio in the amount of $25,312.50; 2 Fractional Passport Juan Dolio in the amount of $21,093.76; 11 Fractional Passport Juan Dolio in the amount of $112,500; 2 Residence Passport Juan Dolio in the amount of $105,750; and 1 Residence Maxim Bungalows Cofresi in the amount of $28,830..

cccccc. Plaintiff, Rosa Vargas, is a citizen of the United States, residing in Windsor, California.   Plaintiff Vargas purchased 1 Residence Passport Juan Dolio in the amount of $14,062.50; and 1 Residence Passport Juan Dolio in the amount $12,656.25.

dddddd.         Plaintiff, George Vaughn, is a citizen of the United States, residing in Windsor, California.  Plaintiff Vaughn purchased 10 Fractional Passport Juan Dolio in the amount of $126,562.50 and 1 Fractional Maxim Bungalows Cofresi in the amount of $48,825.

eeeeee. Plaintiffs, Chris Verano and Cynthia Verano, are citizens of the United States, residing in Fairfield, California.   Plaintiffs Verano jointly purchased 1 Residence Maxim Bungalow Cofresi in the amount of $92,070.

ffffff.  Plaintiffs, Victor Vidas and Cheryl Vidas, are citizens of the United States, residing in Fairfield, California.   Plaintiffs Vidas jointly purchased 4 Fractional Maxim Bungalow Juan Dolio in the amount of $169,600, and 1 Fractional Maxim Bungalow Cofresi in the amount of $50,900.

gggggg.     Plaintiff, Victor Vidas, is a citizen of the United States, residing in Fairfield, California.  Plaintiff Vidas purchased 1 Residence Passport Juan Dolio in the amount of $10,546.88.

hhhhhh.     Plaintiff, Cheryl Vidas, is a citizen of the United States, residing in Fairfield, California.  Plaintiff Vidas purchased 1 Residence Passport Juan Dolio in the amount of $10,546.88.

iiiiii.     Plaintiffs, David Walters and Elizabeth Walters, are citizens of the United States, residing in Pacifica, California.   Plaintiffs Walters jointly purchased 1 Residence Maxim Bungalows Cofresi in the amount of $28,830; 1 Residence Maxim Bungalow Cofresi in the amount of $28,830; 1 Residence Maxim Bungalow Cofresi in the amount of $93,000; and 1 Residence Maxim Bungalow Cofresi in the amount of $93,000.

jjjjjj.     Plaintiffs, Richard Wann and Bobbi Li Wann, are citizens of the United States, residing in Windsor, California.  Plaintiffs Wann jointly purchased 1 Residence Juan Dolio in the amount of $10,546.88; 5 Fractional Maxim Bungalows Juan Dolio in the amount of $67,900.00; 2. Residence Maxim Bungalow Cofresi in the amount of $372,000; and 1 Residence Passport Juan Dolio in the amount of $13,350.

kkkkkk.     Plaintiff, Bobbi Wann, is a citizen of the United States, residing in Windsor, California.   Plaintiff Wann purchased 1 Residence Maxim Bungalows Juan Dolio in the amount of $16,000.00, and 1 Residence Passport Juan Dolio in the amount of $12,000.00.

CASE NO.: 09-20657-CIV-GOLD/McALILEY

llllll.   Plaintiffs, James Welsch and Terri Welsch, are citizens of the United States, residing in Fountain Hills, Arizona.   Plaintiffs Welsch jointly purchased 1 Residence EMI Sun Village Juan Dolio in the amount of $10,000.00; and 4 Fractional Passport Juan Dolio in the amount of $75,000.

mmmmmm.   Plaintiff, Elva White, is a citizen of the United States, residing in Hidden Valley Lake, California.  Plaintiff White purchased 1 Residence EMI Sun Village Juan Dolio in the amount of $10,000.00; 1 Residence EMI Sun Village Juan Dolio in the amount of $25,000.00; 2 Fractional Passport Juan Dolio in the amount of $47,000; and 1 Residence Juan Dolio in the amount of  $12,656.25.

nnnnnn.   Plaintiffs, Brent Woodward and Michele Woodward, are citizens of the United States, residing in Salt Lake City, Utah.   Plaintiffs Woodward jointly purchased 1 Residence Juan Dolio in the amount of $12,656.25.

oooooo.   Plaintiff, Brent Woodward, is a citizen of the United States, residing in Salt Lake City, Utah.   Plaintiff Woodward purchased 1 Fractional Passport Juan Dolio in the amount of $13,218.75; 3 Fractional Passport Juan Dolio in the amount of $31,640.46; 1 Residence Maxim Bungalow Cofresi in the amount of $28,830.00; 1 Residence Maxim Bungalow Cofresi in the amount of $30,690; and 1 Fractional Passport Juan Dolio in the amount of $10,000.

pppppp.    Plaintiff, Michele Woodward, is a citizen of the United States, residing in Salt Lake City, Utah.   Plaintiff Woodward purchased 1 Residence Passport Juan Dolio in the amount of $10,546.88; and 1 Residence Passport Juan Dolio in the amount of $10,000.

qqqqqq.    Plaintiff, Deborah Zotti, is a citizen of the United States, residing in Santa Rosa, California.  Plaintiff Zotti purchased 2 Residence Maxim Bungalows Juan Dolio in the amount of $20,000.

7.    EMI RESORTS, INC. ("**EMIRI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

8.    EMI SUN VILLAGE, INC. ("**EMISVI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

9.    HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A. ("**HSVHDO**"), is a corporation organized and existing under the laws of the Dominican Republic.

10.    EMI RESORTS MANAGEMENT (S.V.G.), INC. ("**ERMSVG**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

11.    EMI COFRESI DEVELOPMENTS, INC., also known as COFRESI DEVELOPMENTS, INC. ("**EMICOFRESI**"), is a corporation organized and existing under the laws of the Turks and Caicos.

12.    ELLIOTT MANAGEMENT, INC., also known as EMI MANAGEMENT, INC. ("**EMI**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

13.    INVERSIONES AVIATI, S.A. ("**AVIATI**"), is a corporation organized and existing under the laws of the Dominican Republic.

14.    SUN VILLAGE JUAN DOLIO, INC. ("**SVJD**"), is a corporation organized and

existing under the laws of the Turks and Caicos.

15.   PROMOTORA XARA, S.A. ("**XARA**"), is a corporation organized and existing under the laws of the Dominican Republic.

16.   ELLIOTT MICHES HOLDINGS, INC. ("**EMH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

17.   INVERSIONES YUBASO, S.A. ("**YUBASO**"), is a corporation organized and existing under the laws of the Dominican Republic.

18.   INMOBILIARIA LIRIOS DEL TROPICO, S.A. ("**ILT**"), is a corporation organized and existing under the laws of the Dominican Republic.

19.   INMOBILIARIA CANADAIGUA, S.A. ("**CANADAIGUA**"), is a corporation organized and existing under the laws of the Dominican Republic.

20.   HSV HOLDINGS, S.A. ("**HSV HOLDINGS**"), is a corporation organized and existing under the laws of the Dominican Republic.

21.   DESARROLLOS MIRADOR COFRESI, S.A. ("**MIRADOR**"), is a corporation organized and existing under the laws of the Dominican Republic.

22.   TENEDORA HSV [BP], S.A. ("**TENEDORA**") is a corporation organized and existing under the laws of the Dominican Republic.

23.   VILLA SANTA PONCA, S.A. ("**VSP**"), is a corporation organized and existing under the laws of the Dominican Republic.

24.   DCS DOMINICAN CONSTRUCTION SERVICES, S.A. ("**DCS**"), is a corporation organized and existing under the laws of the Dominican Republic.

25.   ELLIOTT REGENT HOLDINGS, INC. ("**ERH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

26.   ELLIOTT TOSCANA HOLDINGS, INC. ("**ETH**"), is a corporation organized and existing under the laws of the Turks and Caicos.

27.   LANDMARK LENDING CORPORATION ("**LLCORP**"), is a corporation organized and existing under the laws of the Turks and Caicos.

28.     408 CUMBERLAND HOLDINGS, INC. ("**408**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

29.     BERTUS MANAGEMENT, INC. ("**BERTUS**"), is a corporation organized and existing under the laws of the Turks and Caicos.

30.     ORANGEVILLE RESERVATION SERVICES, LTD. ("**ORANGEVILLE**"), is a corporation organized and existing under the laws of the State of California.

31.     CCW DOMINICANA, S.A., also known as CCW, LTD. ("**CCW**"), is a corporation organized and existing under the laws of the Dominican Republic.

32.     MPS LTD., S.A. ("**MPS**"), is a corporation organized and existing under the laws of the Dominican Republic.

33.     COFRESCO HOLDINGS, INC. ("**COFRESCO**"), is a corporation organized and existing under the laws of the Turks and Caicos.

34.     IMMOBILIARIA MONCEY, S.A. ("**MONCEY**"), is a corporation organized and existing under the laws of the Dominican Republic.

35.     CELLWAVE NETWORKS, LTD. ("**CELLWAVE**"), is a corporation organized and existing under the laws of Gibraltar.

36.     WWIN INTERNATIONAL, LTD. ("**WWIN**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

37.     MELLESINO C. POR A. ("**MELLESINO**"), is a corporation organized and existing under the laws of the Dominican Republic.

38.     TENEDORA WESSEX DOMINICANA, S.A. ("**WESSEX**"), is a corporation organized and existing under the laws of the Dominican Republic.

39.     SUN VILLAGE CONSTRUCCIONES, S.A. ("**SVC**"), is a corporation organized and existing under the laws of the Dominican Republic.

40.     SUN VILLAGE JD HOLDING, INC. ("**SVJD HOLDING**"), is a corporation organized and existing under the laws of the State of Delaware.

41.     1211766 ALBERTA LTD. ("**ALBERTA**"), is a corporation organized and

existing under the laws of the province of Alberta, Canada.

42.    TRIPALMS REAL ESTATE INC. ("**TRIPALMS**"), is a corporation organized and existing under the laws of the province of Ontario, Canada.

43.    OCEAN PALMS REAL ESTATE (SVG) INC. ("**OCEAN**"), is a corporation organized and existing under the laws of St. Vincent and the Grenadines.

44.    Upon information and belief, EMIRI, EMISVI, ERMSVG, HSVHDO, EMICOFRESI, KAHEBRAM, EMI, SVJD, XARA, EMH, YUBASO, ILT, CANADAIGUA, HSV HOLDINGS, MIRADOR, TENEDORA, VSP, DCS, ERH, ETH, LLCORP, 408, BERTUS, ORANGEVILLE, COFRESCO, CCW, MPS, COFDEV, MONCEY, CELLWAVE, WWIN, MELLESINO, WESSEX, SVC, SVJD HOLDING, ALBERTA, TRIPALMS and OCEAN (collectively the "**Elliot Group Companies**"), are corporations which operate as part of a larger group of companies which are substantially owned and/or controlled by defendants, Frederick Elliott and Derek Elliott (collectively, the "**Elliotts**").

45.    The Elliotts operate under a maze of corporations including the Elliott Group Companies and other as of yet unidentified companies acting in active concert with, and as agents for, the Elliotts and the Elliott Group Companies. These companies were used at times interchangeably by the Elliotts, as part of carrying out their fraud and their stated purpose of being "judgment proof."   *See* Composite Exhibit "A."  Thus, the companies changed corporate structures and names on numerous occasions.

46.    Further, upon information and belief, the Elliotts used the Elliott Group Companies as one collective "piggy bank," taking funds from one company indiscriminately to pay the obligations of another, such that the Elliott Group Companies have a unity of interest with the Elliotts and each other to an extent that the separate identities of each no longer exist or should not be recognized independently of one another.

47.    Thus, the Elliott Group Companies are all mere alter egos and agents for the Elliotts, which were used as an integral part of the racketeering enterprise alleged below, were used to effectuate the fraudulent and unlawful acts as alleged in this Amended Complaint, and/or

were formed for the purpose of shielding the Elliotts (by their own written admission) from personal liability and accountability and to perpetrate the fraud upon the Purchaser Plaintiffs and other purchasers of real estate investments offered by the Elliotts and the Elliott Group Companies. *See* Composite Exhibit "A."

48.     DE MARCHENA KALUCHE & ASOCIADOS ("**DMK**") is a firm organized and existing under the laws of the Dominican Republic and which actively participated in the business activities of the Elliot Group Companies, including but not limited to acting as a payment clearing agent for purchase monies received from purchasers of real estate interests from the Elliot Group Companies.

49.     ENRIQUE DE MARCHENA ("**De Marchena**") is an individual and, upon information and belief, a resident of the Dominican Republic.  De Marchena is a principal in DMK, and is, upon information and belief, a member of the Board of Directors of the Elliott Group Companies.

50.     VICTOR CABRAL ("**Cabral**") is an individual and, upon information and belief, a resident of the Dominican Republic.  Upon investigation, information, and belief, Cabral participated and assisted in the racketeering and fraudulent and wrongful conduct of the Elliott Group Companies, Frederick Elliott and Derek Elliott, and was on the Board of Directors of EMIRI.

51.     N.W.N. GROUP, LLC, also known as NET WEALTH NAVIGATORS ("**NWN**") is a limited liability company organized and existing under the laws of the State of Nevada.

52.     MICHAEL LAWTER ("**M. Lawter**"), is an individual and, upon information and belief, a resident of Nevada.  M. Lawter together with his wife, Tippy Tan Lawter directs the business and other activities of, and exercises control over, NWN.

53.     TIPPY TAN LAWTER ("**T. Lawter**"), is an individual and, upon information and belief, a resident of Nevada.  T. Lawter together with M. Lawter directs the business and other activities of, and exercises control over, NWN.

54.     FREDERICK ELLIOTT ("**Frederick**"), is an individual and, upon information

and belief, a resident of the province of Ontario, Canada.  Frederick directs the business and other activities of, and exercises control over, the Elliott Group Companies.

55.     DEREK ELLIOTT ("**Derek**"), is an individual and, upon information and belief, a resident of the Dominican Republic.  Derek directs the business and other activities of, and exercises control over, the Elliott Group Companies.  Additionally, Derek is Frederick's son.

56.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal RICO claims (18 U.S.C. § 1961, *et seq.*).  The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

57.     Pursuant to 28 U.S.C. § 1391, and 18 U.S.C. § 1964, venue is proper in the Southern District of Florida.

58.     This Court has jurisdiction over Frederick, Derek and the Elliott Group Companies and all other Defendants pursuant to 18 U.S.C. § 1965(d).

## GENERAL ALLEGATIONS

59.     The Elliott Group Companies, Frederick and Derek (collectively the "**Elliott Group Defendants**") are in the business of developing and selling real property and real property interests in resorts located in the Dominican Republic.

60.     In addition to developing and selling real property, the Elliott Group Defendants operate and manage the resorts they develop, including hotels, residence properties, and the ancillary amenities to such real property.

## The Resort Properties

### *The EMI Sun Village Resort & Spa*

61.     Frederick and Derek hold themselves out as successful real estate developers, claiming to have developed properties throughout the United States and Canada.

62.     In 1987, Frederick solicited a group of investors to begin the process of acquiring raw land in the Dominican Republic for future development as a hotel/resort.  As part of his plan, Frederick intended to acquire five (5) Dominican Republic corporations which owned real property in a section of Puerto Plata, Dominican Republic commonly known as Cofresi Beach

(the "**Cofresi Parcel**").

63.     The six (6) companies that own the land that comprised the Cofresi Parcel are:

a.     ILT;
b.     CANADAIGUA;
c.     HSV HOLDINGS;
d.     MIRADOR;
e.     TENEDORA; and
f.     VSP.

These six (6) companies are referred to as the "**Cofresi Parcel Companies**."

64.     Upon investigation, information and belief the Cofresi Parcel Companies are now ultimately beneficially owned by EMISVI.

65.     In late 1999 and early 2000, Frederick and Derek proceeded to complete the acquisition of the Cofresi Parcel Companies, so as to enable the Elliott Group Defendants to develop the land.   Their original intent was to develop villas and/or small homes for sale to the public, including persons throughout the United States, on the Cofresi Parcel.

66.     However, in 2000-2001, Frederick and Derek were approached by Hacienda Resorts which had a resort located on an adjacent parcel of land.   Hacienda Resorts offered that, if the Elliott Group Defendants constructed a 300 room resort on the Cofresi Parcel, then Hacienda Resorts would fill those rooms with guests, offering to pay the Elliott Group Defendants on a triple-net basis.

67.     In 2001, the Elliott Group Defendants reached an agreement with Hacienda Resorts and developed a resort property known as the EMI Sun Village Resort & Spa (the "**Sun Village Resort**"), located on Cofresi Beach in Puerto Plata, Dominican Republic.     The Defendants described this location as a "secluded area with spectacular views of the Atlantic Ocean."  The Sun Village Resort offered 300 rooms, master suites, and luxury villas; seven pools and roman tubs, children's pools, and a waterslide; five international restaurants, and nine bars; among other amenities.

68.     The Elliott Group Defendants, and, more specifically, Frederick and Derek, have repeatedly represented to persons throughout the United States, including the Purchaser

Plaintiffs, that they raised the capital necessary to build the Sun Village Resort from private investors who bought equity shares in EMISVI.  Upon investigation, information and belief the Elliott Group Defendants raised approximately $32 Million from just under 1600 shareholders throughout the world during the period 2001-2004.  This was done through presentations personally made by Frederick and Derek to large groups of prospective purchasers, often as invited speakers on cruise ships where such cruises were themed as being targeted to persons interested in international investing.  Upon information and belief, these equity shares were sold only in the Dominican Republic.

69.     Notwithstanding having raised over $32 Million in capital, and nearly three (3) years after the launch date of the resort, as of early 2004, the Sun Village Resort was only approximately 75% complete.  Further, the portions of the Sun Village Resort that were open to the public were already in need of repairs.

70.     Moreover, in addition to building the 300 guest rooms, the Elliott Group Defendants over-built the adjoining amenities.   The amenities were sufficient to support a 500 room resort.  As such, Sun Village Resort was expensive to operate.

71.     Consequently, upon information, investigation and belief the Sun Village Resort operations were insufficient to fund completion of the resort, or to even pay for maintenance of the capital improvements to the resort.

72.     In 2004 Frederick and Derek were having difficulty raising the remaining capital needed to complete the Sun Village Resort through the vehicle they had previously used (selling shares in the Dominican Republic in EMISVI).

73.     Consequently, upon information and belief, the Elliott Group Defendants and specifically Frederick and Derek, devised a plan to fund the completion of the Sun Village Resort through the development and sale of timeshare interests in the existing hotel through a product referred to as the "**Residence Product**".  The Residence Product was not an equity product, but rather the sale of an interest in and/or right to use, the real property.

74.     The Residence Product allowed individuals to purchase a timeshare interest in the

Sun Village Resort.

75.     Upon investigation, information and belief the Elliott Group Defendants, at the direction of Frederick and Derek, created, in-house, a series of marketing brochures and literature, and developed a sales program to sell these Residence Products to the general public, including persons throughout the United States.

76.     These marketing brochures, literature and other documents made representations to prospective purchasers as to the nature and character of the Residence Product being offered for sale by the Elliott Group Defendants.

77.     Upon investigation, information and belief the Elliott Group Defendants were solely responsible for the content of the marketing materials, and it was these materials that the sales personnel relied upon and provided to prospective purchasers, including persons throughout the United States.

78.     As part of its marketing program, the Elliott Group Defendants offered prospective purchasers a trip to the Sun Village Resort to see the project and attend sales presentations.

79.     Owners would then purchase a specific one or two bedroom "luxury" residence suite, allotted by the resort and applied to a specific season, *i.e.* Winter or Summer.  The owner would then have the option to use their room during their allotted time period.

80.     If the owner (the "**TR Timeshare Owner**") did not use the room during their allotted time period, the Elliott Group Defendants rented the room as a vacation package through travel agencies, such as Expedia and Travelocity.  The revenue generated from renting the room would then be divided between the Elliott Group Defendants and the TR Timeshare Owner.  The TR Timeshare Owner's share of the revenue, described as a "non-use" or "**NUF**" fee, would be paid on a quarterly basis by the Elliott Group Defendants.

81.     The Elliott Group Defendants retained the option to buy back the TR Timeshare Owner's suite after five (5) years, at the owner's original purchase price.  If the owner opted to sell the suite prior to the expiration of the five (5) year option, EMIRI would place the suite week

in an on-site sales program. Costs associated with this sale would be deducted from the TR Timeshare Owner's sale proceeds on the basis of 20% of the greater of the original purchase price and actual sales price (if higher than the original price).

82.     If the Elliott Group Defendants elected not to return the principal sum at the end of the five (5) year period, then the TR Timeshare Owner would have the right to collect a NUF fee equal to the existing NUF fee plus a 20% premium each quarter, until the principal sum was paid.

83.     Upon information and belief the Residence Product sales contracts varied over time, including, but not limited to, providing differing rates of NUF to be paid to the TR Timeshare Owner. In addition, the sales contracts did not state a percentage return, but expressed NUF payments in dollar increments. For example, a $10,000.00 timeshare interest purchased with an election not to use by the TR Timeshare Owner would result in an annual NUF of $800 paid in quarterly payments.

84.     Upon information and belief from Spring 2004 through the first quarter of 2008, the Elliott Group Defendants made all quarterly NUF payments.

85.     Upon investigation, information and belief the Elliott Group Defendants sold over $64 Million worth of Residence Product at the Sun Village Resort to persons throughout the United States, including the Purchaser Plaintiffs.

86.     As part of their sales efforts, the Elliott Group Defendants represented to the Purchaser Plaintiffs and other prospective purchasers that the monies being raised through the sale of the Residence Product were being used for new construction and improvements to the existing Sun Village Resort.

87.     Despite raising $96 Million to date ($32 Million in equity, and approximately $64 Million in sales of Residence Product), the Sun Village Resort remains significantly incomplete. There are two buildings where, although the exterior structure is finished, the room interiors are incomplete, the rooms remain unfurnished and are, therefore, uninhabitable.

88.     Despite the above deficiencies, for a period of time, everything seemed to

progress normally.  Every time TR Timeshare Owners briefly visited the Sun Village Resort, they would see what appeared to be major capital improvements to the Sun Village Resort in virtually every area.  The biggest improvements were a new spa and spa suites renovation which included a work-out room, spa treatment rooms, salon, pool, etc.

89.     In addition to major improvements in each room (marble finishes, beds, furniture, décor, flat screen televisions, etc.), the Elliott Group Defendants also built several restaurants, a huge open air theatre with a bar, lounge, and shops.

90.     However, despite representations to the purchasers and owners of the Residence Products, the Sun Village Resort was operating at a loss, and the Elliott Group Defendants were funding the resort's operating losses from the sales of timeshares and Residence Products.  Upon information and belief, the resort's operating cash losses were between $1 and $2 Million annually.  Moreover, upon information and belief, the Elliott Group Defendants were funding the NUF payments to earlier investors using the proceeds of sales to later investors.

**_The EMI Residence_**

91.     Located inside EMI's Sun Village Resort, the EMI Residence was "designed with impeccable detail for the sophisticated Caribbean vacationer" and was scheduled to open in the Fall of 2006. The Elliott Group Defendants described the EMI Residence as a "limited opportunity for ownership in the exclusive enclave of EMI's luxury vacation residences."  The EMI Residence was to consist of 198 one and two bedroom luxury master suites and spacious studios.

92.     However, of the 198 planned suites, only 108 units have been constructed.

93.     While the sales of the EMI Residence originally commenced as a timeshare product, over time the Elliott Group Defendants created another scheme to convert these units to a fractional ownership product (with each unit being divided into 13 fractions).   One reason for the conversion was to allow the Elliott Group Defendants to reduce their NUF payment obligations to investors whom had initially received these payments from the proceeds of sales to later investors.

94.    EMI Residence owners were told by the Elliott Group Defendants that by converting from a timeshare ownership with a NUF, they would become "secured" because their interests would become deeded fractional interests.  In addition, the EMI Residence timeshare owners were told by the Elliott Group Defendants that they could place their fractions into a rental pool.

95.    However, in reality, upon conversion, the Elliott Group Defendants' requirement to make a quarterly NUF payment ceased, and unlike the NUF obligation which was represented provided for guaranteed payment on a certain schedule, the rental pool provided no guarantee of regular payments to EMI Residence owners.

96.    Significantly, however, despite convincing a substantial number of EMI Residence timeshare owners to elect to convert to fractional ownership, the Elliott Group Defendants (upon investigation, information, and belief) have yet to complete the process of condominiumization of the various elements of the fractional ownership property that was formerly known as the EMI Residences.

### ***The Juan Dolio Property***

97.    In late 2004, the Elliot Group Defendants decided to pursue an opportunity to purchase an existing hotel property for re-development.

98.    The property, containing an abandoned Sheraton hotel on the waterfront, was located at Juan Dolio in the Dominican Republic (the "**Juan Dolio Property**").

99.    The former hotel had 268 rooms, was not operational and was owned by two banks, Banco de Reservas and Banco del Progreso.  The banks had taken over the hotel from the prior owner/operator.

100.    The Elliot Group Defendants then devised a plan whereby they would re-develop the Juan Dolio Property as a high-end resort with approximately 241 rooms.  Again, the Elliott Group Defendants created a scheme to sell real estate interests in the Juan Dolio Property to prospective purchasers located throughout the United States.

101.    As part of the sales and marketing of the Juan Dolio Property, the Elliot Group

Defendants misrepresented to prospective purchasers, including the Purchaser Plaintiffs and other persons located throughout the United States, that they already owned the property free and clear, and wanted to raise capital for the re-development of the property through the sale of ownership interests in the resort.

102.    However, upon investigation, information and belief the Elliot Group Defendants did not own the Juan Dolio Property free and clear, but had an agreement to purchase it for $12.5 Million.

103.    Of the $12.5 Million purchase price, the Elliot Group Defendants paid $5.5 Million in cash, and assumed debt of $8.5 Million with Banco de Reservas and Banco del Progreso.

104.    The Elliot Group Defendants sold approximately $3.5 Million worth of timeshare interests ("**Juan Dolio Residence Product**"), which, upon information and belief, was used towards the acquisition of the Juan Dolio Property.

105.    Sales revenue generated by Juan Dolio Residence Product sales was supposed to be used for construction/renovation and remodeling of the Juan Dolio Property.

106.    Upon information and belief, the Elliot Group Defendants may have sold as much as $50 Million worth of Juan Dolio Residence Products.

107.    As part of the Juan Dolio project, the Elliot Group Defendants created a new product called "**Passport**".  Originally, the Elliotts continued to sell the Residence product, but under the new name of Passport.  Subsequently, the Elliotts began selling a "fractional interest" product, also under the name of "Passport," but which offered the purchaser condo hotel ownership with a revenue sharing component that would kick-in after the hotel was opened. Sales of the Passport began in October 2005.

108.    The Passport was supposed to provide funding to cash out the Juan Dolio Residence Product purchasers, essentially paying them back after using their money to construct the hotel and eliminating the need for the Elliott Group Defendants to continue service of NUFs.

109.    Under the new, fractional ownership Passport product, prospective purchasers

would first fill out a "**Deposit Agreemen**t" reserving their units in 1/13 fractions at a time.  A true and correct copy of the Deposit Agreement is attached as Exhibit "B."

110.     Prospective fractional Passport purchasers placed an initial 50% deposit.  The 50% balance would be due at closing.

111.     The inventory was sold in phases, starting with a Founders Phase, Phase 1, Phase 2, and then a Grand Opening Phase.

112.     The Deposit Agreement contains several material terms that the Elliot Group Defendants have violated and never intended to abide by, including but not limited to:

   a.     Section 6(b) promised purchasers "fee simple deeded title".  This was later changed by the Elliott Group Defendants to be a "beneficial interest" in a trust that purportedly holds title.

   b.     Section 6(e) provided for a "Rental Option" to benefit purchasers.  However, because the Elliott Group Defendants diverted money that was to be used to complete the Juan Dolio project, the hotel is admittedly only "60%" completed and therefore, no rental income has been earned.

   c.     Section 6(f) states that "All Deposits will receive 5% interest until Hotel opens".  Accordingly, all prospective purchasers should have been accruing, and should continue to accrue, 5% interest on their deposits until the hotel opens.  Upon information and belief, however, many prospective purchasers have not been paid any of this interest.  Some prospective purchasers were subsequently induced to sign what were described to them as "closing documents" so that the 5% accrued thus far would cease to run.

   d.     Section 7(a) states that the deposit amount is a "down payment" and not a purchase of one half of the fractions reserved.

   e.     Section 7(c) provides that "All principle [sic] and interest payments are waived until the Hotel opens."  This written promise was materially relied upon by all Passport prospective purchasers who put 50% down to their substantial detriment.

113.     In addition, the closing paragraph on the last page of the Deposit Agreement references a "**Prospectus**" which the Purchaser Plaintiffs have not received.

114.     The 5% due is also reconfirmed as to be paid "as part of the Hotel opening" at which time the financing is also "initiat[ed]".

115.     Despite not having completed the redevelopment and re-opening of the Juan Dolio Property, the Elliot Group Defendants induced prospective purchasers, throughout the

United States to close early on the acquisition of the fractional ownership interests.  To induce the prospective purchasers throughout the United States to "close", the Elliot Group Defendants offered to reimburse prospective purchasers for airfare to the Dominican Republic and provide them with two (2) days hotel accommodations, including food and beverages, free of charge.

116.    During their stays, prospective purchasers executed closing documents drafted by and presented to the purchasers by the Elliot Group Defendants.  These closing packages included closing statements, management agreements, and promissory notes whereby prospective purchasers obligated themselves to pay the remaining 50% of the purchase price for the fractional interests.  Importantly, the purchase documents for the fractional ownership products were always counter-signed by Elliott Group employees – not by the sales force who initially sold the product to the prospective purchaser.

117.    To further induce the prospective purchasers to "close" early, the Elliot Group Defendants expressly represented to the prospective purchasers that no payments would be due on the promissory notes until the Juan Dolio project re-opened and was operational.

118.    This was confirmed in writing on the front page of the "closing documents" which contained a summary of what was owned by the purchaser and contained the statement that no payments on notes would be due until the Juan Dolio project opened.  A true and correct copy of the Closing Document Summary is attached as Exhibit "C."

119.    When prospective purchasers asked about the due date listed on the notes, the Elliot Group Defendants told them that they anticipated opening the Juan Dolio hotel before the date on the loan documents.

120.    Prospective purchasers relied upon these verbal and written representations by the Elliott Group Defendants in executing the promissory notes.

121.    To date the Juan Dolio project has not been completed and officially re-opened.

122.    Upon information and belief to date, the Elliot Group Defendants have sold approximately $72 Million of fractional Passport product for the Juan Dolio project.  Given the 50% down payment which was an integral part of sales of the Passport product, the Elliot Group

Defendants collected approximately $36 Million in cash from sales from persons within and outside of the United States.

123.    Yet despite this, the hotel renovations are at best approximately 60% complete and the original developer loans on the Juan Dolio Property have not even been satisfied.

## The Elliotts' Scheme to Defraud

124.    Upon information and belief, the Juan Dolio area of the Dominican Republic has appreciated considerably in the time since the Elliott Group Defendants began selling real estate interests in the Juan Dolio project.

125.    Despite having obligations to shareholders, real estate buyers and others, including the Purchaser Plaintiffs, Frederick and Derek, utilized the Elliot Group Companies as their own personal "piggy bank", extracting large sums of monies from these companies and diverting the funds to companies where they were the sole shareholders and/or to pay for their own personal expenses and projects.

126.    Unbeknownst to anyone outside the Elliot Group Defendants, each time that cash flow would begin to slow down, Frederick and Derek would merely conceive of a new project or scheme to raise money to maintain their lifestyle.

127.    Thus, when the income stream from the sale of timeshares at Sun Village Resort began to slow down, the Elliott Group Defendants conceived the EMI Residence (later known as the **Maxim Bungalows**).  When sales of the Maxim Bungalows peaked, the Elliott Group Defendants conceived the Juan Dolio Project and began sales of the Juan Dolio Residence Product.  Following that, the Juan Dolio Passport was conceived and sold.

128.    Tellingly, one tactic used by the Elliotts was to encourage Residence product owners to "convert" their interests to the fractional products.  One of the benefits the Elliotts claimed Residence product owners would receive by "converting" to fractional ownership was a refund for the price differential between the two products.  However, because the Elliotts professed that they were unable to refund the difference to the new fractional owner, the Elliotts would instead tender promissory notes ("Elliott Promissory Note") to the converted purchaser.

The Elliotts have never paid these Elliott Promissory Notes.

129.    Despite raising, upon information and belief, over $170 Million from sources within and outside of the United States, including the Purchaser Plaintiffs, the Elliott Group Defendants have yet to complete a single one of the various projects that they have commenced, and have now suspended payments due to real estate purchasers, including the Purchaser Plaintiffs.

130.    Instead of utilizing the funds raised in the manner in which they represented to purchasers that they would do so, the Elliott Group Defendants paid themselves massive fees and diverted funds to acquire personal assets, maintain their personal lifestyle, pay personal debts and for personal projects.

131.    In the case of Sun Village Resort, despite the fact that the resort was never operating profitably, upon information and belief, Frederick and Derek authorized the payment of a management fee of 5% of the <u>gross</u> income of the Sun Village Resort to the management company they controlled—EMIRI.

132.    Additionally, despite the fact that they retained an outside professional sales force to sell the various real estate products, the Elliott Group Defendants would, upon information and belief, nonetheless pay to themselves a "commission" or "override" from each sale, often in an amount equal to the sales commission earned and paid to the actual sales force.

133.    In addition to the commissions being paid to the actual sales personnel, on each of the various projects, additional overrides would be paid under the guise of commissions, including payments to:

    a.    EMISVG in amounts ranging from 5% to 20% of the purchase price;

    b.    WWIN of 1% of the purchase price;

    c.    Michael Fitzpatrick of .50% of the purchase price of sales at Sun Village Cofresi, and .25% of the value of Maxim Bungalows at Cofresi which were converted to fractional interests;

    d.    An override ranging between 1.50% and 3.50% of the purchase price being paid to the VP of Hospitality, the Sun Village Cofresi Hotel operating account, to pay for marketing materials and to pay for Software

and Owner-Services Accounting; and

    e.    An override of between 1.0 % and 1.50% of the purchase price payable to the Elliott Group Companies legal team on sales of Maxim Bungalows at Cofresi, and Maxim Bungalows at Juan Dolio;

For example, on sales of the Juan Dolio Passport, the Elliott Group Defendants collected a commission of 20 percent (20%) of the gross sales value of each Juan Dolio Passport sold. Thus, from a $10,000 Juan Dolio Passport Product sale, on which a $5,000 down payment was received, the Elliott Group Defendants would immediately pay themselves $2,000.

134.    These monies, which were fraudulently diverted by the Elliott Group Defendants, were not utilized to pay the legitimate expenses of the Sun Village Resort and the Juan Dolio project, such as legitimate operating expenses, payments of NUF, payment of renovation expenses and other items.

135.    Instead, these fraudulently diverted funds were misdirected to:

    a.    Pay $1.5 Million to a movie production called "Man About Town" so that Derek would receive credit as producer of the film. Additional sums were diverted to fund a movie production called "Lovewrecked", and to create a film festival in the Dominican Republic;

    b.    Pay over $1 Million of Derek's personal gambling debts at Rio Resort and Casino in Las Vegas, Nevada;

    c.    Acquire a 1996 Prevost mobile home at a cost of over $300,000 for Frederick and Derek to use during their various trips to the United States;

    d.    Pay for and operate a private plane, a 2006 Mooney Bravo GX, utilized by Frederick and Derek;

    e.    Invest in a joint venture for the development of a brand of cigars referred to as "Artisan Cigars" or "Artisan Selection Cigars";

    f.    Acquire and operate a private yacht, "The Independence" for approximately $520,000, which was frequently used personally by Derek;

    g.    Fund a $7.5 Million down payment in October 2006, and a second $7.5 Million payment in October 2007, to acquire a 22,500 square meter parcel of land in a section of the Dominican Republic known as Miches – retaining ownership of the land (initially in a company controlled by Frederick and Derek); and

    h.    Sustain and then segregate for separate development a parcel of land adjacent to the Sun Village Resort in Cofresi, commonly referred to as Treasure Bluff (originally part of the parcel of land transferred to EMISVI), and which the Elliott Group Defendants are now seeking to

benefit from by selling at an asking price of $27.5 Million.

### The Elliotts' Misrepresentations

136.   To induce the Purchaser Plaintiffs and other purchasers to buy their real estate products, the Elliott Group Defendants made material misrepresentations about the products being sold and themselves.   These include, but are not limited to, the following:

- a.    That the real estate product being purchased was a safe investment.   This was false because purchasers are not receiving the payments that the Elliott Group Defendants promised to make, including NUF payments, and have refused to return monies of purchasers requesting it.

- b.    That no fees or maintenance expenses would be required.   Despite this representation by the Elliott Group Defendants in marketing the real estate products, upon information and belief the actual documents created by the Elliott Group Defendants to create these real estate products (and which were not shown to the Purchaser Plaintiffs or other purchasers) provide that these residential interests will be converted to fractional ownership.

- c.    That the purchasers were making a real estate investment that would render guaranteed regular NUF payments.   Upon information and belief the actual documents created by the Elliott Group Defendants to create these real estate products (and which were not shown to the Purchaser Plaintiffs or other purchasers), provide that under certain circumstances, at the Elliott Group Defendants' discretion, the Elliott Group Defendants could elect not to make payments.  In fact, despite the "guarantee" of NUF payments, the Elliott Group Defendants ceased making NUF payments since the first quarter of 2008.

- d.    That construction on the Sun Village Resort was complete and that construction on the Juan Dolio Project was substantially complete.   As alleged above, both properties remain substantially unfinished.

- e.    That the Purchaser Plaintiffs and other purchasers were acquiring a liquid real estate investment.  This was false, as purchasers were allowed to sell only through the Elliott Group Defendants' onsite sales program (and not directly to third parties), and purchasers seeking to resell were required to pay the Elliott Group Defendants a fee, usually in an amount equal to 20% of the resale value.

### The Elliotts' Latest Scheme to Raise Cash

137.   Finding themselves unable to sustain the scheme to defraud by selling new real estate products, upon information and belief the Elliot Group Defendants have come up with a new plan to raise cash from persons throughout the United States to sustain their lifestyles.

138.   Upon information and belief the Elliot Group Defendants have decided– notwithstanding their representation that the Juan Dolio Passport promissory notes were not due

until the Juan Dolio project reopened – to seek collection of the notes from purchasers.

139.    To do so, upon information and belief the Elliot Group Defendants have created (or caused to be created) a collection company, AVIATI.

140.    The Elliot Group Defendants have now allegedly sold the notes to AVIATI. AVIATI has declared the notes due, despite the fact that the condition precedent to payment – the completion and reopening of the Juan Dolio project – has never been satisfied.  Demand for payment is being made to persons throughout the United States.

141.    Further, the Elliot Group Defendants have communicated to owners of the Passport that AVIATI intends to begin "foreclosing" upon the notes, and stating that purchasers will lose the deposit monies they paid, unless these purchasers execute additional agreements (containing different and less favorable terms) to the purchasers.

142.    Upon information and belief the Elliot Group Defendants' plan, as to those noteholders who do not pay the notes in response to the demand, is to allegedly foreclose their interests and then attempt to re-sell those real estate interests (either as fractions or as entire condominium units).

143.    Separately, to allow the Elliot Group Defendants to retain the monies raised from the sale of Residence Products, without having to make the required payments to purchasers, the Elliott Group Defendants began to "offer" purchasers the option to "convert" the Residence Products to fractional ownership interests under which the Elliott Group Defendants would have no obligations to make any payments to such purchasers post-conversion.  This "option" is being offered to persons throughout the United States.

144.    To coerce the purchasers to accept the conversion option, the Elliott Group Defendants told purchasers that conversion was the only way to "fully preserve their asset" and make their real estate interest more "secure", and that if they converted, then the converted purchasers would be entitled to offer their fractional interests for re-sale.

145.    However, even this "re-sale" program is a further scheme to defraud, as there are several instances where owners who have successfully sold their fractional interests did not

receive the proceeds from those sales. Instead the Elliott Group Defendants diverted the proceeds from those re-sales, using the monies for their own purposes.

146.    The Elliott Group Defendants have attempted to coerce the purchasers into accepting their demands that purchasers, including the Purchaser Plaintiffs, "convert" by threatening that those that do not "convert" and who attempt to assert their legal rights will "forfeit" their interests and collect none of their investment back from what the Elliott Group Defendants themselves describe as a maze of "judgment proof" companies. *See* Composite Exihibit "A". In essence, the Purchaser Plaintiffs and the other purchasers were told that if they participated in a lawsuit such as the present action, they would lose their investments.

147.    Moreover, in 2008 the Elliott Group Defendants were facing increasing questions about the uses of the proceeds of the real estate sales, questions as to why it appeared that the work supposedly being funded from such sales seemed to go undone, as well as questions as to the nature and legitimacy of their business operations.

148.    When these questions were not satisfactorily answered, the existing professional sales force which had been selling the Elliott Group Companies' real estate products throughout the United States, ceased selling such products and severed its relationship with the Elliot Group Defendants.

149.    Needing to continue their present day sales to allow them to fund the payment of NUF fees to prior purchasers and otherwise fund their illicit activities, the Elliott Group Defendants, conspired with their Dominican Republic attorneys, De Marchena and DMK, to make it seem like all monies from new sales, conversions, and re-sales were going into an escrow account specifically set up by DMK for Elliott Group Defendant sales.

150.    However, upon information and belief Frederick and Derek have the ability to indiscriminately direct the disbursement of monies from the supposed DMK "escrow" account, for use to fund the activities of the Elliott Group Defendants.

151.    Further, following the existing professional sales force's decision to end its relationship with the Elliott Group Defendants, M. Lawter, T. Lawter and NWN – who had

formerly been part of that same sales force that terminated their relationship with the Elliott Group Defendants – began to conspire with the Elliott Group Defendants in furtherance of the Elliott Group Defendants' scheme to defraud.   T. Lawter, M. Lawter and NWN acted in active concert with the other conspirators and continue even today to actively attempt to sell the Elliott Group Defendants' products in furtherance of this conspiracy and the various schemes to defraud investors.  Also in furtherance of the Elliott Group Defendants' scheme to defraud, M. Lawter, T. Lawter and NWN have acted, and continue to act, as agents for the Elliott Group Defendants in making representations to and communicating with purchasers of the Elliott Group Defendants' real estate products.

### The Targets of the Elliotts' Scheme to Defraud

152.    The Elliott Group Defendants targeted their scheme to defraud predominantly to prospective purchasers of real estate interests in the United States and Canada.

153.    Upon information and belief, approximately 53% of all the real estate interests sold were sold to residents of the United States located in Florida and other states.

154.    As part of their targeted plan to defraud purchasers in Florida and the United States as a whole, the Elliott Group Defendants established bank accounts in Miami, Florida and Las Vegas, Nevada for purposes of receiving payments from purchasers of real estate interests in furtherance of the scheme.

155.    Upon information and belief, approximately 42% of all the real estate interests sold were sold to residents of Canada.

156.    All conditions precedent to bringing this action have occurred or have been waived.

157.    The Purchaser Plaintiffs have retained the undersigned attorneys to represent him in this action and agreed to pay them a reasonable fee for their services.

### COUNT I
### Racketeering Influenced and Corrupt
### Organizations ("RICO"), Title 18 U.S.C. § 1962(c)

158.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth

herein.

## The Activities of the Elliott Enterprise

159.    The Purchaser Plaintiffs are now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

160.    Each defendant is now and at all relevant times has been a "person" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962.

161.    From at least 2001, continuously through the present, Defendants and others, known and unknown, in Miami-Dade County, Florida, Puerto Plata, Dominican Republic, and elsewhere, formed an association in fact for the common and continuing purposes and goals described herein, which constitutes an "Enterprise," within the meaning of 18 U.S.C. § 1961(4) (the "**Elliott Enterprise**").   The Elliott Enterprise functions as a continuing unit within an ascertainable structure separate and distinct from that of the conduct or pattern of racketeering activity.

## Goal and Purpose

162.    The goal of the Elliott Enterprise has been, and continues to be, to perpetrate a fraud upon purchasers of real estate interests, and to generate illegally obtained money which has been converted into real and personal property owned by a convoluted maze of shell companies and used to create a base of operations for Frederick and Derek's other illicit, improper and/or illegal business dealings.  In operating the Elliott Enterprise, Defendants defrauded the Purchaser Plaintiffs of monies due them as a NUF, and by diverting monies from the operation of the Sun Village Resort and from the Juan Dolio Project, thereby unjustly enriching its members, their co-racketeers and others who assisted in defrauding the Purchaser Plaintiffs.  Frederick and Derek were able to accomplish their goals by misusing instrumentalities of foreign and interstate commerce, including the misuse of international wire facilities and the mails.  Each of these fraudulent acts has had a serious impact on interstate and foreign commerce because, among other things, the fraudulent activity involved transportation or communication between places in two or more states or between some place in the United States and someplace outside the United

States.

163.     As an integral part of the goal and purpose of the Elliott Enterprise, its members selected Miami, Florida, as the location for activities of the Elliott Enterprise.  Miami presented the perfect location for the situs of the Elliott Enterprise.  Miami presented Fred and Derek with a sophisticated banking system with access to international financial markets, and willing bilingual professionals to assist them in their illegal pursuits.

**The Laws that Frederick and Derek Violated While
They Conducted the Affairs of the Elliott Enterprise**

164.     Frederick and Derek  violated federal law while engaged in the affairs of the Elliott Enterprise, as follows:

      a.      wire fraud, in violation of 18 U.S.C. § 1343;

      b.      money laundering, in violation of 18 U.S.C. § 1956;

      c.      engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957;

      d.      travel in interstate and foreign commerce in aid of the ELLIOTT racketeering enterprise, in violation of 18 U.S.C. § 1952;

      e.      transportation of stolen monies, in violation of 18 U.S.C. § 2314; and

      f.      sale or receipt of stolen monies, in violation of 18 U.S.C. §  2315.

165.     The Defendants were associated with and exerted control over the Elliott Enterprise and conducted or participated, directly or indirectly, in the conduct of the Elliott Enterprise's affairs through a pattern of racketeering activity.

**The Pattern of Racketeering Activity**

166.     In furtherance of their scheme, Frederick and Derek conducted, participated in or exerted control over, either directly or indirectly, the conduct of the Elliott Enterprise's affairs through a pattern of racketeering activity, or aided and abetted, counseled, or commanded the other Defendants or related parties who did so, by engaging in at least two acts of racketeering activity that have the same or similar criminal intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not

isolated acts of racketeering activity. The pattern of racketeering activity, which began in 2001 or before and continues through and including the date upon which this Amended Complaint is filed, and which the Purchaser Plaintiffs expect to continue uninterrupted, involved racketeering acts or predicate acts, including multiple violations of the federal criminal laws of the United States, which amounted to and pose a threat of continued criminal activity.

167. These acts of racketeering or predicate acts were related to the Elliott Enterprise and had similar purposes, participants, results, victims, and methods of commission. These acts of racketeering activity include, but are not limited to, the following:

**Transportation of Stolen Monies in Interstate or Foreign Commerce**

168. Frederick and Derek in furtherance of and for the purpose of executing their fraudulent scheme described above, did transport, transmit, or transfer in interstate or foreign commerce, monies of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud, belonging to the Purchaser Plaintiffs, which they knew to be stolen or taken by fraud, in violation of Title 18 U.S.C. § 2314.

**Sale or Receipt of Stolen Monies**

169. Frederick and Derek  did receive, possess, conceal, store, barter, sell, or dispose of money of the value of $5,000 or more, which crossed a state or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken, in violation of Title 18 U.S.C. § 2315.

**Wire Fraud**

170. Frederick and Derek having devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, as described above, knowingly and willfully transmitted or caused to be transmitted by means of a wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for (a) the purpose of executing such scheme, in violation of Title 18 U.S.C. § 1343, and for (b) the purpose of executing such scheme, through the transfer of monies, in violation of 18 U.S.C. § 1343.

**Interstate and Foreign Travel or Transportation in
Aid of the Elliott Racketeering Enterprise**

171.    Frederick and Derek knowingly and willfully traveled in interstate or foreign commerce or used the mail or any facility in interstate or foreign commerce, with intent to distribute the proceeds of an unlawful activity and to further an unlawful activity and otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, in violation of 18 U.S.C. § 1952.

**Laundering of Monetary Instruments**

172.    Frederick and Derek did knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, the proceeds of one or more violations of Title 18 U.S.C. §§ 1343 (wire fraud), 1952 (travel in interstate and foreign commerce in aid of a racketeering enterprise), 2314 (transportation of stolen monies), and 2315 (receipt or possession of stolen monies), with the intent to promote the carrying on of specified unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and to avoid a transaction reporting requirement under State or Federal law, and that while conducting and attempting to conduct such financial transactions, Frederick and Derek knew that the property involved in the financial transaction, represented the proceeds of some form of unlawful activity, in violation of Title 18 U.S.C. §§ 1956 (a)(1)(A)(i) or (B)(i) or (ii).

173.    As part of their money laundering activities, Frederick and Derek formed defendant WWIN.   WWIN was then utilized as a pseudo-banking entity by the Elliott Enterprise to comingle both the proceeds of its illicit activities with other legitimate payments and to allow for the disbursement of the proceeds of the Elliott Enterprise's illicit activities to its members, including Frederick and Derek.

174.    By creating WWIN, the Elliott Enterprise made a network of pre-paid Visa Electron cards to distribute to both legitimate vendors and to members of the Elliott Enterprise. In this way, the monies being distributed to the members of the Elliott Enterprise could be

funded through WWIN into the pre-paid Visa Electron accounts, and then be accessed through automated bank teller withdrawals and through purchases made using the Visa Electron cards

175.    One example of such disbursements to a member of the Elliott Enterprise were the over $114,000 in payments made to defendant Cabral.  Upon information and belief Cabral, was paid "off the books" as a "consultant" through one of the WWIN sub accounts linked to a Visa Electron card – although his role as a consultant was generally kept quiet.  Cabral is the ex Tourism Minister of the Dominican Republic, and was recently ordered arrested so as to serve a one (1) year prison sentence for fraud.

176.    In addition to the activities of WWIN, the Elliott Group Defendants created a series of shell corporations that had no independent business operations and whose principal purpose was to facilitate the expedited negotiation of checks and other payment instruments in furtherance of the Elliott Enterprise.  These companies, which include defendants CCW, MPS and Orangeville, were created to expedite the clearance of checks and circumvent clearance holds which had been imposed upon the then existing Elliott Group Companies by their respective financial institutions.

**Engaging in Monetary Transactions in Criminally Derived Property over $10,000.00**

177.    Frederick and Derek did knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, exchange of U.S. Currency, funds or monetary instruments, such property having been derived from a specified unlawful activity, that is, the proceeds of one or more violations of Title 18 U.S.C. §§ 1343 (wire fraud), 1952 (travel in interstate or foreign commerce in aid of racketeering), 2314 (transportation of stolen monies), and 2315 (receipt or possession of stolen monies), in violation of 18 U.S.C. § 1957.

178.    Certain other acts of racketeering activity, including but not limited to, theft, mail fraud, wire fraud, interstate and foreign travel in aid of a racketeering enterprise, transportation of stolen monies, sale or receipt of stolen monies, laundering of monetary instruments, engaging

in monetary transactions in criminally derived property of a value greater than $10,000.00 and other violations of federal law that occurred, but are currently unknown to the Purchaser Plaintiffs.  Each such act of racketeering activity constitutes a separate act in the pattern of racketeering activity in which the Elliott Enterprise engaged.

179.    The benefits derived from the pattern of racketeering activity consist of tens, if not hundreds, of millions of dollars in funds stolen from the Purchaser Plaintiffs and other purchasers of timeshare interests and fractional ownership interests.

180.    The Purchaser Plaintiffs have been injured by reason of the foregoing.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES,

LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for the damages that he suffered in an amount to be proven at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

### COUNT II
### Conspiracy to Violate 18 U.S.C. § 1962(c) in Violation of § 1962(d)

181.    The Purchaser Plaintiffs reallege paragraphs 1 through 180 as if fully set forth herein.

182.    From at least as early as 2001 through the present, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed, and reached an understanding with each other and with others known and unknown, to violate 18 U.S.C. § 1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of the Elliott Enterprise, which engaged in, and the activities of which, affected, interstate and foreign commerce.

183.    The racketeering activity described in Count I was part of a sophisticated and well organized scheme wherein each of the predicate acts relates to and directly advances one or more

of the purposes of the scheme, as described above.

184.    The goal of the conspiracy was to enrich Frederick and Derek, their co-conspirators, and those who aided and abetted them, at the expense of the Purchaser Plaintiffs, by facilitating, directing, or engaging in several overt acts, which consisted of the a pattern of racketeering activity as described in Count I.

185.    As a result of the unlawful actions of the conspiracy, the Purchaser Plaintiffs have been injured.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW

CASE NO.: 09-20657-CIV-GOLD/McALILEY

DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for the damages that he suffered in an amount to proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, and such other relief as the Court deems appropriate.

### COUNT III
### Civil Remedies for Criminal Practices Act, Florida Statute § 772.103

186.     The Purchaser Plaintiffs reallege paragraphs 1 through 180 as if fully set forth herein.

187.     From at least as early as 2001 through the present, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, agreed and reached an understanding with each other and with others known and unknown, associated together as part of the Elliott Enterprise, and did unlawfully, willingly, and knowingly violate Florida Statute § 772.103(3) by conducting and by participating, directly or indirectly, in the conduct of the affairs of the Elliott Enterprise through a pattern of criminal activity that involved multiple violations of the criminal laws of Florida, including organized fraud and communications fraud in violation of the Florida Communications Fraud Act, Florida Statute § 817.034, and Theft, in violation of Florida Statute § 812.014.

188.    The overall goal and purpose of the Elliott Enterprise was to enrich its members and associates, including Defendants, through the repeated commission of related criminal acts.

189.    As alleged in paragraphs 118 through 150, Defendants defrauded the Purchaser Plaintiffs and others throughout the United States and Canada of millions of dollars with the intent to either temporarily or permanently deprive the Purchaser Plaintiffs of  their right to the property, in this case money, in violation of Florida Statute § 812.014(1)(a).

190.    In addition, as alleged in paragraphs 118 through 150, Defendants defrauded the Purchaser Plaintiffs and others throughout the United States and Canada of millions of dollars with the intent to appropriate the property, in this case money, to the Defendants' own use or to the use of a person not entitled thereto, in violation of Florida Statute  § 812.014(1)(b).

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign

corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for the compensatory damages that he suffered in an amount to be proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Florida Statute § 772.104, and for injunctive relief pursuant to Florida Statute § 895.05(6), and such other relief as the Court deems appropriate.

**COUNT IV**
**Conspiracy to Violate Civil Remedies for**
**Criminal Practices Act, Fla. Stat. § 772.103**

191.    The Purchaser Plaintiffs reallege paragraphs 1 through 180 as if fully set forth herein.

192.    All the Elliott Group Defendants, and all non-defendant co-conspirators, conspired to violate the provisions of Florida Statute § 772.103(1) and (3), as alleged above.

193.    As a result, the Purchaser Plaintiffs were damaged.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign

corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an

individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for the compensatory damages that he suffered in an amount to be proved at trial, which as provided for by statute, is then to be trebled, plus attorneys' fees, court costs, costs of investigation, interest, pursuant to Florida Statute § 772.104, and for injunctive relief pursuant to Florida Statute § 895.05(6), and such other relief as the Court deems appropriate.

### COUNT V
### BREACH OF CONTRACT

194.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein

195.    The Purchaser Plaintiffs agreed to purchase a timeshare interest in Sun Village Resort, the Maxim Bungalows and the Juan Dolio Project as a result of the Elliott Group Defendants' agreements contained in the Rental Agreement, an example of which is attached as Exhibit "D," and the Vacation Interval Ownership Agreement, an example of which is attached as Exhibit "E."

196.    The Purchaser Plaintiffs made this purchase upon the agreement that they would receive a quarterly NUF fee in accordance with the terms of the Rental Agreement and the Vacation Interval Ownership Agreement.

197.    The Elliott Group Defendants breached the Rental Agreement and Vacation Interval Ownership Agreement by failing to make NUF payments when due.

198.    As a result of the Elliott Group Defendants' breach, the Purchaser Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI

DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages, and such further relief as the Court deems just and equitable.

**COUNT VI**
**UNJUST ENRICHMENT**

199.     The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

200.     The Purchaser Plaintiffs provided the Elliott Group Defendants with a benefit in the form of a financial investment in, and a time commitment to, a real estate venture with the Elliot Group Defendants.

201.     The Elliot Group Defendants were aware of, and benefited from, the receipt of capital invested by the Purchaser Plaintiffs.

202.     The Elliot Group Defendants knew that the Purchaser Plaintiffs expected to be compensated for the capital investment they provided to the Elliot Group Defendants.

203.     However, the Elliot Group Defendants have not fully and fairly compensated the Purchaser Plaintiffs.

204.     Additionally, upon information and belief, the Elliot Group Defendants diverted monies which were to be properly used for the development, improvement, management, and operation of the resort properties, including the payment of NUF fees and re-payment of principal to TR Timeshare Owners.

205.     Further, upon information and belief, these monies were diverted to the personal use and benefit of Fred and Derek, including, but not limited to, paying for their participation and investment in Hollywood films, television programs promoting Fred and Derek (to the exclusion of the properties), and gambling trips to Las Vegas and other locations for the exclusive benefit and enjoyment of Fred and Derek.

206.     Under these circumstances, it would be inequitable for the Elliot Group Defendants to retain the benefits without paying for them.

207.     As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of the Purchaser Plaintiffs.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign

corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an

individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages, and such further relief as the Court deems just and equitable.

## COUNT VII
## FRAUD IN THE INDUCEMENT

208.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

209.    The Purchaser Plaintiffs agreed to purchase the timeshare interests as a result of the representations made by the Elliot Group Defendants.

210.    The Elliott Group Defendants made specific representations about their extensive experience in real property development and resort management, and made repeated assurances about the success of the projects in which the timeshare interests were sold, and their specific representations that the projects would be properly run in a commercially reasonable manner.

211.    Consequently, the Purchaser Plaintiffs placed a great degree of trust and confidence in the Elliot Group Defendants, and fully relied on their advice and counsel with respect to numerous aspects of this venture.

212.    But for the specific misrepresentations made by the Elliot Group Defendants, the Purchaser Plaintiffs would not have entered into the contractual relationship with the Defendants.

213.    The Purchaser Plaintiffs relied upon the representations of the Elliot Group Defendants and as a result have been damaged.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation,

CASE NO.: 09-20657-CIV-GOLD/McALILEY

INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages, and such further relief as the Court deems just and equitable.

## COUNT VIII
## INJUNCTIVE RELIEF

214.   The Purchaser Plaintiffs reallege paragraphs 1 through 180 as if fully set forth herein.

215.   The Purchaser Plaintiffs are entitled to injunctive relief to prevent the Elliot Group Defendants from transferring the ownership of the resort properties, from further diverting the assets of the companies away from their proper uses, taking any action to further harm the interests of the Purchaser Plaintiffs or taking any actions or steps to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties in violation of the parties' agreement.

216.   The Purchaser Plaintiffs have a clear, enforceable interest in the real estate venture with the Elliot Group Defendants.

217.   Specifically, the Purchaser Plaintiffs agreed to invest his capital in the resort properties in exchange for payment of the NUF and ultimately the return of his principal investment all derived from the operation of the resort properties.

218.   The Purchaser Plaintiffs performed their side of the agreement.

219.   The Purchaser Plaintiffs are likely to succeed on the merits in his claim against the Elliot Group Defendants due to the extensive pattern of fraud, diversion, and misappropriation of funds.

220.   The Purchaser Plaintiffs will suffer irreparable harm if the Elliot Group Defendants transfer the resort properties to any person other the Elliot Group Defendants, are allowed to further divert or dissipate the assets of the companies away from their proper uses, are permitted to take any action to further harm the interests of the Purchaser Plaintiffs, or are in any way able to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties.

221.   Because real property is unique, and the Purchaser Plaintiffs' interest is therefore unique, retention of the resort properties and maintenance of the status quo as to their ownership rights is the only way that the Purchaser Plaintiffs can secure their rights to compensation.

222.    A monetary award is insufficient to fully compensate the Purchaser Plaintiffs for their capital investment in the timeshare and fractional interest properties because the proceeds from the sale or transfer of the Properties are likely to be transferred and held beyond the Court's jurisdiction.

223.    Preventing the Elliot Group Defendants from transferring the Properties or any of their assets to any third person or entity and restraining them from attempting to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties will serve the public interest because it will compel the Elliot Group Defendants to keep their promises and agreements with the Purchaser Plaintiffs.

224.    No harm will be done to the Elliot Group Defendants by the injunction, as they will be required to perform their side of the contract as they initially agreed to perform.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA

HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, preventing them from conveying, transferring, and/or encumbering in any other way, the Properties or assets of the Elliott  Group Defendants (whether legally or beneficially owned or titled) to any third person or entity and from attempting to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties, and such further relief as the Court deems just and equitable.

## COUNT IX
## EQUITABLE LIEN

225.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

226.    The Purchaser Plaintiffs provided the Elliot Group Defendants with a benefit in the form of a financial investment in the development, management, and operation of the resort properties.

227.    The Purchaser Plaintiffs directly contributed their investment to the improvement of the resort properties.

228.    The Elliot Group Defendants were aware of, and benefited from, the receipt of capital invested by the Purchaser Plaintiffs.

229.    The Elliot Group Defendants knew that the Purchaser Plaintiffs expected to be compensated for the capital they invested in the resort properties.

230.    However, the Elliot Group Defendants have not fully compensated the Purchaser Plaintiffs.

231.    Additionally, the Elliot Group Defendants failed to utilize the funds raised in the manner in which they represented they would do so.

232.    Under these circumstances, it is inequitable for the Elliot Group Defendants to retain the benefits without paying for them.

233.    As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of the Purchaser Plaintiffs.

234.    The Purchaser Plaintiffs have no adequate remedy at law, as a monetary award would not be sufficient to fully compensate the Purchaser Plaintiffs for the time and money they invested in the Properties.

235.    Consequently, the Purchaser Plaintiffs are entitled to an equitable lien in the Properties in which they invested (whether directly or indirectly).

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a

foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, on the resort properties in which the Purchaser Plaintiffs invested capital, and such further relief as the Court deems just and equitable.

**COUNT X**
**CONSTRUCTIVE TRUST**

236.     The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

237.     The Purchaser Plaintiffs entered into an agreement with the Elliot Group Defendants, pursuant to which the Purchaser Plaintiffs provided the Elliot Group Defendants with a benefit in the form of a financial investment in, and a time commitment to, a real estate venture.

238.     The Purchaser Plaintiffs' investment was used (together with similarly diverted investments from others) to acquire personal and real property in the name of entities in which the Purchaser Plaintiffs had no interest or right to benefit.

239.     The Purchaser Plaintiffs placed a great degree of trust and confidence in the Elliot Group Defendants with respect to their business venture, and expected loyalty from them.

240.     The Elliot Group Defendants gained the Purchaser Plaintiffs' confidence and trust, but abused it.

241.     As a direct result of the Purchaser Plaintiffs' efforts and those of other purchasers, the Elliot Group Defendants acquired legal rights to the Juan Dolio Property, the Miches Property and other assets, utilizing the funds received from the Purchaser Plaintiffs and the other purchasers.

242.     The Elliot Group Defendants knew of, and benefited from, the Purchaser Plaintiffs' investment.

243.     The Elliot Group Defendants knew that the Purchaser Plaintiffs expected to be compensated for the capital and time they invested into the resort properties.

244.     However, the Elliot Group Defendants have not fully compensated the Purchaser Plaintiffs for their participation in the real estate venture.

245.     As a result of the foregoing, the Elliot Group Defendants have been unjustly enriched to the detriment of the Purchaser Plaintiffs.

246.     Under these circumstances, it is inequitable for the Elliot Group Defendants to

retain or receive any benefits of or from the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds, at the expense of the Purchaser Plaintiffs.

247.    The Purchaser Plaintiffs have no adequate remedy at law because a monetary award would not be sufficient to fully compensate the Purchaser Plaintiffs for their investment in the Properties.

248.    Consequently, the Purchaser Plaintiffs are entitled to a constructive trust on the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW

DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, acting as a trustee for the Juan Dolio Property, Miches Property and other assets acquired with purchasers' funds, and such further relief as the Court deems just and equitable.

## COUNT XI
## ACCOUNTING

249.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

250.    The Purchaser Plaintiffs agreed to purchase timeshare and fractional ownership interests in the real estate developments in the Dominican Republic as a direct result of the Elliot Group Defendants' representations that monies raised from the sale of such interests would be utilized for the acquisition, development, and management of the Sun Village Resort and Juan Dolio Project.

251.    The Purchaser Plaintiffs invested their capital into the timeshare and fractional ownership interests in the Sun Village Resort and Juan Dolio Project in exchange for the Elliot Group Defendants' assurance that the properties would be operated and managed in a commercially reasonable manner.

252.    The Purchaser Plaintiffs, by reason of their entitlement to NUF and other benefits

from his ownership in the timeshare and fractional ownership interests, had the right to expect that the Elliot Group Defendants would not engage in inappropriate business transactions, self-dealing, and/or diversion of funds from the operation of the Sun Village Resort and Juan Dolio Project.

253.   Upon information and belief the Elliot Group Defendants breached this promise, and, in turn, their duties to the Purchaser Plaintiffs, by diverting funds for the personal use and benefit of the Elliott Group Defendants, including, but not limited to, paying for Frederick and Derek's participation and investment in Hollywood films, paying for television programs promoting Frederick and Derek  (to the exclusion of the properties), gambling trips to Las Vegas and other locations for Frederick and Derek, and payment of other expenses not directly related to the development, management, and operation of the Sun Village Resort and Juan Dolio Project.

254.   The Elliot Group Defendants have taken affirmative steps to conceal and secret such misconduct from the Purchaser Plaintiffs and the other owners of timeshare and fractional ownership interests throughout the United States.

255.   The Elliot Group Defendants have never provided any accounting to the Purchaser Plaintiffs as related to the earning of NUF, as to the proper apportionment of NUF fees as between the Elliot Group Defendants and the Purchaser Plaintiffs and other owners, and as to whether improper payments or expenditures in any way reduced the NUF or other payments due to the Purchaser Plaintiffs and the other owners.

256.   The Purchaser Plaintiffs have no adequate remedy at law, as the true financial status of the Sun Village Resort and Juan Dolio Project is unknown.

WHEREFORE, the Purchaser Plaintiffs demand an accounting of all profits, monies received, income, expenses and other monies spent or disbursed related to the Sun Village Resort and Juan Dolio Project, and such further relief as the Court deems just and equitable.

## COUNT XII
## PROMISSORY ESTOPPEL

257.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

258.    The Elliot Group Defendants repeatedly represented to the Purchaser Plaintiffs that the promissory notes executed in connection with the acquisition of the Passport would not be due y until the Juan Dolio hotel was completed and officially re-opened.

259.    The Elliot Group Defendants have failed to honor this representation.

260.    The Elliot Group Defendants knew or could reasonably foresee that this promise would induce reliance on the Purchaser Plaintiffs' part.

261.    The Purchaser Plaintiffs, acting in reasonable reliance on the Elliot Group Defendants' representations, incurred a substantial detriment in the form of placing their 50% deposit at risk, and incurring an obligation to pay monies pursuant to a note.

262.    The Elliot Group Defendants' promises to the Purchaser Plaintiffs are binding, and injustice can only be avoided by enforcement of those promises.

263.    The Purchaser Plaintiffs would not have closed upon the acquisition of the Passport or executed the notes, but for the Elliot Group Defendants's representations.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation,

INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages and such further relief as the Court deems just and equitable.

## COUNT XIII
## INJUNCTIVE RELIEF (AVIATI)

264.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein..

265.    The Purchaser Plaintiffs are entitled to injunctive relief to prevent AVIATI from taking any actions or steps to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs'

ownership interests in the timeshare and fractional interest properties in violation of the parties' agreements.

266.    The Purchaser Plaintiffs have a clear, enforceable interest in the Passport fractional real estate ownership interests.

267.    Specifically, the Purchaser Plaintiffs agreed to close upon the acquisition of the Passport and execution of promissory notes for the remaining balance of the purchase price upon the Elliott Group Defendants' express representation that the Juan Dolio Project would be promptly completed and that the payments on the notes would not be due until the completion and re-opening of the Juan Dolio Project.

268.    To date, the redevelopment of the Juan Dolio Project has not been completed, and the hotel has not officially re-opened.

269.    Despite this, AVIATI, as assignee of the notes, has declared the notes due and owing.

270.    Further, AVIATI is threatening to take actions or steps to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interests.

271.    The Purchaser Plaintiffs performed their side of the agreement.

272.    The Purchaser Plaintiffs are likely to succeed on the merits in his claim against AVIATI.

273.    The Purchaser Plaintiffs will suffer irreparable harm should AVIATI be able to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties.  Because real property is unique, and the Purchaser Plaintiffs' interest is likewise unique, retention of the resort properties and maintenance of the status quo as to his ownership rights is the only way that the Purchaser Plaintiffs can secure their rights.

274.    A monetary award is insufficient to fully compensate the Purchaser Plaintiffs.

275.    Preventing AVIATI from attempting to extinguish, terminate, or otherwise impair the Purchaser Plaintiffs' ownership interest in the timeshare and fractional interest properties will

serve the public interest because it will hold the Elliot Group Defendants, and AVIATI as their successor in interest, to their promise not to call the notes due until the Juan Dolio Project was completed and officially re-opened.

276.    No harm to AVIATI will be done by the injunction, as they will be required to perform their side of the contract.

WHEREFORE, the Purchaser Plaintiffs demand an injunction against Defendant, INVERSIONES AVIATI, S.A., a foreign corporation, preventing it from attempting to extinguish, terminate, or otherwise impair plaintiff's ownership interest in the timeshare and fractional interest properties, and such further relief as the Court deems just and equitable.

**COUNT XIV**
**CIVIL CONSPIRACY**

277.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

278.    The Elliot Group Defendants and AVIATI entered into an express or implied agreement among themselves to achieve one common purpose – to deprive the Purchaser Plaintiffs of their interest in the Passport and the proceeds and benefits from such ownership.

279.    In pursuit of this conspiracy, the Elliot Group Defendants and AVIATI, without the Purchaser Plaintiffs' knowledge and authorization, transferred the ownership of the note the Purchaser Plaintiffs executed, to which transfer Defendants have admitted.

280.    These wrongful acts by the Elliot Group Defendants, constituted a conspiracy to commit a tort against the Purchaser Plaintiffs and breach their obligations to the Purchaser Plaintiffs.

281.    As a result of the Elliot Group Defendants and AVIATI's conspiracy and their acts in furtherance of the conspiracy, the Purchaser Plaintiffs suffered damages in an amount to be determined at trial.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign

corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation, INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an

individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages and such further relief as the Court deems just and equitable.

## COUNT XV
## FALSE AND MISLEADING ADVERTISING

282.    The Purchaser Plaintiffs reallege paragraphs 1 through 157 as if fully set forth herein.

283.    The Elliott Group Defendants made material and significant representations through its advertising about the timeshare and fractional ownership real estate products to the Purchaser Plaintiffs to induce their purchase, as outlined more particularly in paragraphs 118-150 above.  These representations were designed to induce the Purchaser Plaintiffs' reliance on the representations and the Purchaser Plaintiffs did personally rely to their detriment on these representations.

284.    The falsity of the Elliott Group Defendants' representations have damaged the Purchaser Plaintiffs since they are not getting the benefit of their bargain and have had to incur costs and expenses as a consequence of these false representations.

WHEREFORE, the Purchaser Plaintiffs demand judgment against FREDERICK ELLIOTT, an individual; DEREK ELLIOTT, an individual; EMI RESORTS, INC., a foreign corporation, EMI SUN VILLAGE, INC., a foreign corporation, HSV HOTELES DE OPERADORA, S.A., f/k/a EMI RESORTS MANAGEMENT S.A., a foreign corporation, EMI RESORTS MANAGEMENT (S.V.G.), INC., a foreign corporation, EMI COFRESI DEVELOPMENTS, INC., a/k/a COFRESI DEVELOPMENTS, INC., a foreign corporation, ELLIOT MANAGEMENT, INC., a/k/a EMI MANAGEMENT, INC., a foreign corporation, INVERSIONES AVIATI, S.A., a foreign corporation, SUN VILLAGE JUAN DOLIO, INC., a foreign corporation, PROMOTORA XARA, S.A., a foreign corporation, ELLIOTT MICHES HOLDINGS, INC., a foreign corporation, INVERSIONES YUBASO, S.A., a foreign corporation, INMOBILIARIA LIRIOS DEL TROPICO, S.A., a foreign corporation,

INMOBILIARIA CANADAIGUA, S.A., a foreign corporation, HSV HOLDINGS, S.A., a foreign corporation, DESARROLLOS MIRADOR COFRESI, S.A., a foreign corporation, TENEDORA HSV [BP], S.A., a foreign corporation, VILLA SANTA PONCA, S.A., a foreign corporation, DCS DOMINICAN CONSTRUCTION SERVICES, S.A., a foreign corporation, ELLIOTT REGENT HOLDINGS, INC., a foreign corporation, ELLIOTT TOSCANA HOLDINGS, INC., a foreign corporation, LANDMARK LENDING CORPORATION, a foreign corporation, 408 CUMBERLAND HOLDINGS, INC., a foreign corporation, BERTUS MANAGEMENT, INC., a foreign corporation, ORANGEVILLE RESERVATION SERVICES, LTD., a California corporation, COFRESCO HOLDINGS, INC. , a foreign corporation, CCW DOMINICANA, S.A., a foreign corporation, MPS LTD., S.A., a foreign corporation, IMMOBILIARIA MONCEY, S.A., a foreign corporation, and CELLWAVE NETWORKS, LTD., a foreign corporation, WWIN INTERNATIONAL LTD., a foreign corporation, MELLESINO C. POR A., a foreign corporation, TENEDORA WESSEX DOMINICANA, S.A., a foreign corporation, SUN VILLAGE CONSTRUCCIONES, S.A., a foreign corporation, SUN VILLAGE JD HOLDING, INC., a Delaware corporation, 1211766 ALBERTA LTD., a foreign corporation, TRIPALMS REAL ESTATE INC., a foreign corporation, OCEAN PALMS REAL ESTATE (SVG) INC., a foreign corporation, DE MARCHENA KALUCHE & ASOCIADOS, a foreign corporation, ENRIQUE DE MARCHENA, an individual, VICTOR CABRAL, an individual, N.W.N GROUP, LLC, a/k/a NET WEALTH NAVIGATORS, LLC, a Nevada limited liability company, MICHAEL LAWTER, an individual, TIPPY TAN LAWTER, an individual, for damages pursuant to Florida Statute § 817.41, together with an award of reasonable attorneys fees and costs, and such further relief as the Court deems just and equitable.

CASE NO.: 09-20657-CIV-GOLD/McALILEY

## <u>JURY TRIAL DEMAND</u>

The Purchaser Plaintiffs demand a trial by jury for all matters so triable.

DATED: October 16, 2009

Respectfully submitted,

 s/ Gerardo Rodriguez-Albizu
Michael Diaz, Jr. (Florida Bar No. 606774)
Attorney E-mail Address: mdiaz@diazreus.com
Carlos F. Gonzalez (Florida Bar No. 0494631)
Attorney E-mail Address: cgonzalez@diazreus.com
Gary E. Davidson (Florida Bar No. 0069094
Attorney E-mail Address: gdavidson@diazreus.com
Gerardo J. Rodriguez-Albizu (Florida Bar No. 61685)
Brant C. Hadaway (Florida Bar No. 0494690)
Attorney E-mail Address: bhadaway@diazreus.com
DIAZ REUS & TARG, LLP
100 Southeast 2nd Street, Suite 2600
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050


*Counsel for Purchaser Plaintiffs*

CASE NO.: 09-20657-CIV-GOLD/McALILEY

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 16, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Gerardo Rodriguez-Albizu
GERARDO RODRIGUEZ-ALBIZU

CASE NO.: 09-20657-CIV-GOLD/McALILEY

## SERVICE LIST

**Martha Aguilar,** *et al.*
**v.**
**EMI Resorts, Inc.,** *et al.*
**Case No.: 09-20657-CIV-GOLD/McALILEY**
**United States District Court, Southern District of Florida**


Special Master Thomas E Scott
Special Master E-Mail Address:  scott@csklegal.com
Cole, Scott & Kissane, P.A.
9150 South Dadeland Blvd., Suite 1400
Miami, Florida 33156
Telephone:  (305) 350-5300
Facsimile:  (305) 373-2294
Service by CM/ECF

The Elliott Defendants
E-Mail Address: elliottdfc@gmail.com
Service by Electronic Mail

Russell M Hayson
Attorney E-Mail Address: russhayson@yahoo.com
Pallotto & Hayson, P.A.
450 North Park Road, #302
Hollywood, Florida 33021
Telephone (305) 981-6760
Fax (305) 981-9729
Service by CM/ECF

*Counsel for Defendant, Inversiones Aviati, S.A.*